IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| Wellington Spencer Coppess, | ) | No. CV 09-176-TUC-CKJ (HCE) |
| Petitioner, | ) ) | **REPORT & RECOMMENDATION** |
| vs. | ) ) | |
| Charles L. Ryan; et. al., | ) ) | |
| Respondents. | ) ) ) | |

Pending before the Court is Petitioner's *pro se* Petition for Writ of Habeas Corpus (hereinafter "Petition") filed pursuant to 28 U.S.C. §2254 (Doc. 1). Pursuant to the Rules of Practice of this Court, this matter was referred to the undersigned Magistrate Judge for Report and Recommendation. For the following reasons the Magistrate Judge recommends that the District Court dismiss in part and deny in part the Petition for Writ of Habeas Corpus.

## I.   BACKGROUND

### A.   State Proceedings

#### 1.   Conviction

A brief summary of pertinent portions of the record of pre-trial and trial proceedings follows.

The Arizona Court of Appeals summarized the facts of Petitioner's case as follows:

> In March 2002, after a night of drinking, [Petitioner] and his former wife L. [Voss], left a bar sometime between 1:00 and 1:30 a.m. L. [Voss] was driving when they left the bar, but they began to argue on the way home,

stopped at a park, and got out of the vehicle briefly. When they left the park, [Petitioner] drove east on Prince Road. A witness testified that [Petitioner] was traveling between 100 and 120 miles per hour. Instead of stopping for a red light, [Petitioner] attempted to pass other vehicles stopped at the light by swerving into oncoming, westbound lanes of traffic. He lost control of the vehicle and struck an oncoming car.

During the collision, L.[Voss] was thrown from the vehicle, and [Petitioner] landed in the back seat. [Petitioner] left the vehicle and started walking away from the scene. When a witness asked where he was going, he ran away. Police later found him hiding in a nearby yard. [Petitioner] was arrested, and subsequent testing of his blood established he had an alcohol concentration of .117 percent.

The driver of the other car sustained bruising and deep lacerations. A female passenger in that vehicle suffered a crushed left foot and ankle, broken pelvis, severed aorta, and brain damage. Her fifteen-month-old son, who was riding in the back seat, was killed. L.[Voss] was rendered paraplegic and also sustained a punctured lung and broken ribs and vertebrae.

(Answer (Doc.14), Exh. I, pp. 3-4).

The State charged Petitioner with Second-Degree Murder, Aggravated Driving Under The Influence (hereinafter "DUI") While License Is Suspended Or Revoked, Aggravated Driving With A Blood Alcohol Concentration (hereinafter "BAC") Of .08 Or More While License Is Suspended Or Revoked, Leaving The Scene After Causing An Accident Involving Death Or Serious Physical Injury, two counts of Criminal Damage, and six counts of Aggravated Assault. (Answer, Exh. B) The case proceeded to trial and, at the close of the State's case, the prosecutor successfully moved to dismiss one aggravated assault charge and to amend the DUI and BAC charges to allege lesser-included misdemeanor charges. (Answer, Exh. C, pp. 74-75). The jury convicted Petitioner of the amended and remaining charges. (Answer, Exh. D, pp. 6-10). The trial court sentenced Petitioner to the following terms of imprisonment: Count 1, Second-Degree Murder, 20 years (aggravated); Count 2, Aggravated Assault, 10 years (aggravated); Count 3, Aggravated Assault, 10 years (aggravated); Count 4, Aggravated Assault, 7.5 years (presumptive); Count 6, Aggravated Assault, 10 years (aggravated); Count 7, Aggravated Assault, 10 years (Aggravated); Count 8, Leaving The Scene, 3.5 years (presumptive); Count 9, DUI, 6 months; Count 10, BAC, 6 months; Count 11, Criminal Damage, 1 year (presumptive); and Count 12, Criminal Damage, 1 year (presumptive). (Answer, Exh, E, pp. 29-34). The trial court ordered that: the sentences for Counts 2 and 3 would run concurrently with each other but consecutively

to the sentence for Count 1; the sentence for Count 4 would run concurrently with the sentences for Counts 1, 2, and 3; the sentences for Counts 6 and 7 would be served concurrently to each other but consecutively to the sentences for Counts 1, 2, 3, and 4; the sentence for Count 8 would run consecutively to the sentences for Counts 1, 2, 3, 4, 6, and 7; the sentences for Counts 9 and 10 would run concurrently to each other but consecutively to all other sentences[1]; and the sentences for Counts 11 and 12 would be served concurrently to each other but consecutively to all other sentences. (*Id.*).  In total, Petitioner was sentenced to 44.5 years of imprisonment.  (*Id.*).

2.     Direct Appeal

Petitioner sought direct review arguing that the trial court erred:

1.     by granting the State's motion to cross-examine Petitioner's proffered expert witness, Dr. Richard Hinton, about the basis for his opinion including Petitioner's prior incarceration;

2.     by admitting Ms. Voss' statements at the accident scene that Petitioner had been driving, thereby violating the Arizona Rules of Evidence and his rights under the Confrontation Clause;

3.     by admitting evidence about Petitioner's blood draw;

4.     by instructing the jurors about the permissible inferences they could draw based on their finding of his BAC within 2 hours of the collision; and

5.     by imposing aggravated sentences based on facts not found by the jurors.

(*See* Answer, Exhs. A, P).

On May 27, 2005, the Arizona Court of Appeals affirmed Petitioner's convictions but granted relief on claim 5 and remanded for Petitioner to be resentenced.  (Answer, Exh. A).

Both Petitioner and the State sought review of the appellate court's decision. (Answer, Exhs. F, G).  While both petitions for review were pending, the Arizona Supreme

---

[1]Defendant was ultimately given time served on amended Counts 9 and 10.  (Answer, Exh. E, pp. 34-35).

Court issued two opinions that impacted Petitioner's case: *State v. Martinez,* 210 Ariz. 578, 584, 115 P.3d 618, 624 (2005) (holding that once one *Blakely*-compliant aggravating factor was found, the entire sentencing range became available and a trial judge could exercise discretion to sentence a defendant anywhere within the applicable range), and *State v. Henderson,* 210 Ariz. 561, 567, 115 P.3d 601, 602 (2005) (holding that under state law, a defendant who fails to object at trial forfeits the right to obtain appellate relief unless the defendant can prove fundamental, prejudicial error on appeal).   In Petitioner's case, the Arizona Supreme Court summarily denied Petitioner's Petition for Review but granted the State's Petition for Review and remanded the case to the Arizona Court of Appeals for reconsideration in light of *Martinez* and *Henderson*.  (Answer, Exh. H).

On February 28, 2006, upon remand, the Arizona Court of Appeals vacated its May 27, 2005 decision and affirmed Petitioner's convictions and sentences.  (Answer, Exh. I). Petitioner did not seek review of that decision.  (Answer, Exh. J).

3.     Petition for Post-Conviction Relief

On February 16, 2006, while Petitioner's direct appeal was pending on remand, Petitioner, through counsel, filed a Notice of Post-Conviction Relief. (Answer, Exh. K).  In his Petition for Post-Conviction Relief (hereinafter "PCR Petition"), Petitioner argued that:

1.     his trial counsel was ineffective under *Strickland*  because counsel did not: (a) call Dr. James Comer to testify as an expert witness about Petitioner's alleged Post-Traumatic Stress Disorder (hereinafter "PTSD"); (b) object to the admission of the State's evidence regarding the blood draw; and (c) inform him of a plea offer from the State; and

2.     the trial court violated Petitioner's right to an impartial jury under the Sixth Amendment by not questioning all jurors to determine whether the conduct of one juror who had been dismissed tainted the remaining jurors.

(Answer, Exh. L).  On May 23, 2007, the trial court denied Petitioner's PCR Petition. (Answer, Exh. M).  Thereafter, Petitioner sought appellate-court review of the trial court's

1    denial of his PCR Petition.  (Notice of Compliance, Exh. 1 (Doc. 28)[2]).  On March 25, 2008,

2    the appellate court granted review but denied relief.  (Answer, Exh. N).  Petitioner did not

3    seek review of that decision and the mandate issued on May 12, 2008.  (Answer, Exh. O).

4              B.    Petitioner's Federal Petition for Writ for Habeas Corpus

5          Petitioner's Petition for Writ of Habeas Corpus filed with this Court was file-stamped

6    by the Clerk of the Court on March 30, 2009.  The last page of the Petition bears the

7    following statement signed by Petitioner:

8          I declare under penalty of perjury that the foregoing is true and correct and that
           this Petition for Writ of Habeas Corpus was placed in the prison mailing
9          system on 3-20-2009 (month, day, year).

10   (Petition, p. 12).

11         Petitioner raises the following claims in his Petition:

12   1.    "The court committed fundamental error when it violated Petitioner's

13         constitutional right to confront witnesses against him" in violation of the Sixth

14         and Fourteenth Amendments (Ground I) (Petition, p. 6);

15   2.    Violation of Petitioner's rights under the Sixth and Fourteenth Amendments

16         for a jury to determine aggravating factors (Ground II);

17   3.    Violation of Petitioner's right to due process under the Fourteenth Amendment

18         with regard to "mental incompetence, in the rule of *Pate v. Robinson*,

19         [illegible] *v. Oaklahoma* [sic], (and) *Dusky v. United States*" (Ground III) (*Id.*

20         at p. 8); and

21   4.    Ineffective assistance of trial counsel in violation of Petitioner's rights under

22         the Sixth Amendment due to counsel's alleged failure to: (a) call Dr. Hinton

23         to testify about Petitioner's PTSD; (b) object to the admission of evidence

24         regarding Petitioner's BAC; (c) inform Petitioner of a plea offer; (d) call

25         witnesses who would testify that Petitioner was not driving; and (e) call Dr.

26

27         [2]Because Petitioner's Petition for Review was not included with Respondents'
     Answer, the Court directed Respondents to submit the Petition for Review (Doc. 27) and
28   Respondents did so.  (*See* Doc. 28, Exh. 1).

Comer to testify as an expert witness about "mental competency and mitigating factors..." such as "frontal lobe brain injury" (Ground IV) (Petition, p.9).

On October 9, 2009, Respondents filed their Answer wherein they argue that the Petition is untimely filed. (Answer, pp. 7-14). Alternatively, Respondents argue that Petitioner's claims are either procedurally defaulted or without merit. (*Id.* at pp. 16-30).

On January 20, 2010, Petitioner filed his "Traverse Reply to Answer to Habeas Corpus" (hereinafter "Reply) (Doc. 24). On February 11, 2010, Petitioner filed an Amendment and Clarification to Petitioner's Traverse Reply to Answer to Habeas Corpus (Doc. 26). Petitioner's Amendment and Clarification is untimely filed. However, given that Respondents have not objected to the untimely filing and in the interests of fairness, the Court construes Petitioner's Amendment and Clarification as a Supplement to his Reply (hereinafter "Petitioner's Supplemental Reply") and will consider the document in resolving Petitioner's Petition.

## II.     STANDARD OF REVIEW

Because Petitioner filed his Petition after April 24, 1996, this case is governed by the Antiterrorism and Effective Death Penalty Act of 1966, 28 U.S.C. § 2254(d) (hereinafter "AEDPA").

### A.     Statute of Limitations

The "AEDPA imposes a one-year statute of limitations on habeas corpus petitions filed by state prisoners in federal court." *Patterson v. Stewart,* 251 F.3d 1243, 1245 (9th Cir. 2001) (citing 28 U.S.C. § 2244(d)(1)) (footnote omitted). Pursuant to section 2244, the limitations period:

shall run from the latest of–
(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
(C) the date on which the constitutional right asserted was

initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1)(A)-(D).

The limitations period is subject to statutory and equitable tolling. *See* 28 U.S.C. §2254(d)(2) (statutory tolling); *Holland v. Florida,* __ U.S. __, 130 S.Ct. 2549 (June 14, 2010) (equitable tolling).

 B. Exhaustion of State Remedies and Procedural Default

  1. Exhaustion

A federal court may not grant a petition for writ of habeas corpus unless the petitioner has exhausted the state court remedies available to him  28 U.S.C. § 2254(b); *Baldwin v. Reese,* 541 U.S. 27(2004); *Castille v. Peoples,* 489 U.S. 346 (1989).  The exhaustion inquiry focuses on the availability of state court remedies at the time the petition for writ of habeas corpus is filed in federal court. *See O'Sullivan v. Boerckel,* 526 U.S. 838 (1999).  Exhaustion generally requires that a prisoner provide the state courts an opportunity to act on his claims before he presents those claims to a federal court. *Id.*  A petitioner has not exhausted a claim for relief so long as the petitioner has a right under state law to raise the claim by available procedure. *See* Id.; 28 U.S.C. § 2254(c).

To meet the exhaustion requirement, the petitioner must have "'fairly present[ed]' his claim in each appropriate state court...thereby alerting that court to the federal nature of the claim." *Baldwin,* 541 U.S. at 29; *see also Duncan v. Henry,* 513 U.S. 364, 365-66 (1995). A petitioner fairly presents a claim to the state court by  describing the factual or legal bases for that claim and by alerting the state court "to the fact that the...[petitioner is] asserting claims under the United States Constitution." *Duncan,* 513 U.S. at 365-66. *See also Tamalini v. Stewart*, 249 F.3d 895, 898 (9th Cir. 2001) (same).  Mere similarity between a claim raised in state court and a claim in a federal habeas petition is insufficient. *Duncan,* 513 U.S. at 365-66.

1    Furthermore,  to fairly present a claim, the petitioner "must give the state courts one

2    full opportunity to resolve any constitutional issues by invoking one complete round of the

3    State's established appellate review process." *O'Sullivan,* 526  U.S. at 845.  Once a federal

4    claim has been fairly presented to the state courts, the exhaustion requirement is satisfied.

5    *See Picard  v. Connor,* 404 U.S. 270, 275 (1971).  In habeas petitions, other than those

6    concerning life sentences or capital cases, the claims of Arizona state prisoners are exhausted

7    if  they have been fairly presented to  the Arizona Court of Appeals either on appeal of the

8    conviction or through a collateral proceeding pursuant to Rule 32 of the Arizona Rules of

9    Criminal Procedure.[3]  *Swoopes v. Sublett,* 196 F.3d 1008, 1010 (9th Cir. 1999), *cert. denied*

10   529 U.S. 1124 (2000).  Thus, "a petitioner fairly and fully presents a claim to the state court

11   for purposes of satisfying the exhaustion requirement if he presents the claim: (1) to the

12   proper forum..., (2) through the proper vehicle..., and (3) by providing the proper factual and

13   legal basis for the claim...."  *Insyxiengmay v. Morgan,* 403 F.3d 657, 668 (9th Cir. 2005)

14   (citations omitted).

15                    2.    Procedural Default

16    In some instances a claim can be technically exhausted even though the state court did

17   not address the merits.  This situation is referred to as "procedural bar" or "procedural

18   default."  *See Coleman v. Thompson,* 501 U.S. 722, 732 ("A habeas petitioner who has

19   defaulted his federal claims in state court meets the technical requirements for exhaustion;

20   there are no state remedies any longer 'available' to him.").   A claim is procedurally

21   defaulted if the state court declined to address the issue on the merits for procedural reasons

22   such as waiver or preclusion.  *Ylst v. Nunnemaker,* 501 U.S. 797, 802-05 (1991); *Franklin*

23   *v. Johnson,* 290 F.3d 1223, 1230 (9th Cir. 2002). A higher court's subsequent summary denial

24   reaffirms the lower court's application of a procedural bar.  *Ylst,* 501 U.S. at 803.

25

26         [3]Respondents argue that *Baldwin* "implicitly overruled" *Swoopes* and its progeny, and

27   thus, to satisfy the exhaustion requirement Petitioner herein must present  his claims to the
     Arizona Supreme Court to satisfy the exhaustion requirement.  (Answer, p. 17). That

28   argument is addressed *infra,* at III.B.4.a.

Additionally, procedural default also occurs if the claim was not presented to the state court and it is clear the state court would now refuse to address the merits of the claim for procedural reasons. *Id.* Thus, if a claim has never been presented to the state court, a federal habeas court may determine whether state remedies remain available.[4] *See Harris v. Reed,* 489 U.S. 255, 263 n.9 (1989); *Franklin,* 290 F.3d at 1231. In Arizona, such a determination often involves consideration of Rule 32 *et seq.* of the Arizona Rules of Criminal Procedure governing post-conviction relief proceedings. For example, Ariz.R.Crim.P. 32.1 specifies when a petitioner may seek relief in post-conviction proceedings based on federal constitutional challenges to convictions or sentences. Under Rule 32.2, relief is barred on any claim which could have been raised in a prior Rule 32 petition for post-conviction relief, with the exception of certain claims[5] which were justifiably omitted from a prior petition. Ariz.R.Crim.P. 32.2. Moreover, a state post-conviction action is futile when it is time-barred. *Beaty,* 303 F.3d at 987; *Moreno v. Gonzalez,* 116 F.3d 409, 410 (9th Cir. 1997) (recognizing untimeliness under Ariz.R.Crim.P. 32.4(a) as a basis for dismissal of Arizona petition for post-conviction relief, distinct from preclusion under Ariz.R.Crim.P. 32.2(a)).

Both of these instances of procedural default provide an independent and adequate state-law ground for the conviction and sentence and thus prevents federal habeas corpus

---

[4]The Ninth Circuit has suggested that, under Ariz.R.Crim.P. 32.2, there are exceptions to the rule that a district court can decide whether state remedies remain available for claims that require a knowing, voluntary, and intelligent waiver. *See Cassett v. Stewart*, 406 F.3d 614 (9th Cir. 2005), *cert. denied,* 546 U.S. 1172 (2006). The issue of waiver must be affirmatively raised by the petitioner. *See Beaty v. Stewart,* 303 F.3d 975, 987 & n.5 (9th Cir. 2002), *cert denied,* 538 U.S. 1053 (2003).

[5]Such claims include: (1) that the petitioner is being held in custody after his sentence has expired; (2) certain circumstances where newly discovered material facts probably exist and such facts probably would have changed the verdict or sentence; (3) the petitioner's failure to file a timely notice of post-conviction relief was without fault on his part; (4) there has been a significant change in the law that would probably overturn petitioner's conviction if applied to his case; and (5) the petitioner demonstrates by clear and convincing evidence that the facts underlying the claim would be sufficient to establish that no reasonable fact-finder would have found petitioner guilty beyond a reasonable doubt. Ariz.R.Crim.P. 32.2(b) (citing Ariz.R.Crim.P. 32.1(d)-(h)).

1   review.  Accordingly, the procedural default doctrine prevents state prisoners from obtaining

2   federal review by allowing the time to run on available state remedies and then rushing to

3   federal court seeking review.  *Coleman,* 501 U.S. at 731-732 (1991).

4                              a.       Cause and Prejudice

5          A petitioner may be relieved from a procedural default on a showing of cause and

6   prejudice.  *Gray v. Netherland,* 518 U.S. 152, 161-162 (1996); *see also Murray v. Carrier,*

7   477 U.S. 478, 485-495 (1986); *Franklin*, 290 F.3d at 1231.  Generally, "cause" sufficient "to

8   excuse a default exists if the petitioner 'can show that some objective factor external to the

9   defense impeded counsel's efforts to comply with the State's procedural rule.'"  *Cook v.*

10  *Schriro,* 538 F.3d 1000, 1027 (9th Cir. 2008) (*quoting Murray,* 477 U.S. at 488).  Examples

11  of cause sufficient to excuse a procedural default include "'a showing that the factual or legal

12  basis for a claim was not reasonably available to counsel,' or that 'some interference by

13  officials' made compliance impracticable.'"  *Id.* (*quoting Murray,* 477 U.S. at 488)).

14  Additionally, in certain circumstances, ineffective assistance of counsel may also constitute

15  cause sufficient to excuse a default.  *Id.* (*citing Edwards v. Carpenter,* 529 U.S. 446, 451

16  (2000); *Murray,* 477 U.S. at 488).

17         Prejudice is actual harm resulting from the constitutional violation or error.  *Magby*

18  *v. Wawrzaszek,* 741 F.2d 240, 244 (9th Cir. 1984).  To establish prejudice, a petitioner must

19  demonstrate that the alleged constitutional violation "worked to his actual and substantial

20  disadvantage, infecting his entire trial with error of constitutional dimension." *United States*

21  *v. Frady,* 456 U.S. 152, 170 (1982).  If the petitioner fails to establish cause sufficient to

22  excuse a procedural default, the court "need not consider whether he suffered actual

23  prejudice."  *Cook,* 538 F.3d at 1028 n.13.

24                              b.       Fundamental Miscarriage of Justice

25         A habeas petitioner "may also qualify for relief from his procedural default if he can

26  show that the procedural default would result in a 'fundamental miscarriage of justice.'"

27  *Cook,* 538 F.3d at 1028 (*citing Schlup v. Delo,* 513 U.S. 298, 321 (1995)).  This exception

28  to the procedural default rule is limited to habeas petitioners who can establish that "a

constitutional violation has probably resulted in the conviction of one who is actually innocent." *Schlup,* 513 U.S. at 327. *See also Murray,* 477 U.S. at 496; *Cook,* 538 F.3d at 1028. "'To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence–whether it be exculpatory scientific evidence, trustworthy eye-witness accounts, or critical physical evidence–that was not presented at trial.'" *Cook,* 538 F.3d at 1028 (*quoting Schlup,* 513 U.S. at 324).

### 3.    Conclusion

In summary, failure to exhaust and procedural default/bar are different concepts. *Franklin*, 290 F.3d at 1230-1231. Under both doctrines, the federal court may be required to refuse to hear a habeas claim. *Id.* The difference between the two is that when a petitioner fails to exhaust, he may still be able to return to state court to present his claims there. *Id.* In contrast, "[w]hen a petitioner's claims are procedurally barred and a petitioner cannot show cause and prejudice for the default [or a fundamental miscarriage of justice]...the district court dismisses the petition because the petitioner has no further recourse in state court." *Id.* at 1231.

### C.    Review of a Claim on the Merits

Pursuant to the provisions of the AEDPA, the Court may grant a writ of habeas corpus only if the state court proceeding:

> (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. §2254(d). Section 2254(d)(1) applies to challenges to purely legal questions resolved by the state court and section 2254(d)(2) applies to purely factual questions resolved by the state court. *Lambert v. Blodgett*, 393 F.3d 943, 978 (9th Cir. 2004). Therefore, the question whether a state court erred in applying the law is a different question from whether it erred in determining the facts. *Rice v. Collins* 546 U.S. 333 (2006).

Section 2254(d)(1) consists of two alternative tests, i.e., the "contrary to" test and the

1   "unreasonable application" test. *See Cordova v. Baca*, 346 F.3d 924, 929 (9th Cir. 2003).

2   Under the first test, the state court's "decision is contrary to clearly established federal law

3   if it fails to apply the correct controlling authority, or if it applies the controlling authority

4   to a case involving facts materially indistinguishable from those in a controlling case, but

5   nonetheless reaches a different result." *Clark v. Murphy*, 331 F.3d 1062, 1067 (9th Cir.

6   2003)(*citing Williams v. Taylor*, 529 U.S. 362, 413-14 (2000)). Additionally, a state court's

7   decision is "'contrary to' Supreme Court case law if the state court 'applies a rule that

8   contradicts the governing law set forth in' Supreme Court cases."[6] *Van Lynn v. Farmon*, 347

9   F.3d 735, 738 (9th Cir. 2003) (*quoting Early v. Packer*, 537 U.S. 3, 8 (2002)). "Whether a

10  state court's interpretation of federal law is *contrary* to Supreme Court authority...is a

11  question of federal law as to which [the federal courts]...owe no deference to the state

12  courts." *Cordova*, 346 F.3d at 929 (emphasis in original)(distinguishing deference owed

13  under the "contrary to" test of section (d)(1) with that owed under the "unreasonable

14  application" test).

15       Under the second test, "'[a] state court's decision involves an unreasonable

16  application of federal law if the state court identifies the correct governing legal

17  principle...but unreasonably applies that principle to the facts of the prisoner's case.'" *Van

18  Lynn*, 347 F.3d at 738 (*quoting Clark*, 331 F.3d at 1067). Under the "unreasonable

19  application clause...a federal habeas court may not issue the writ simply because that court

20  concludes in its independent judgment that the relevant state-court decision applied clearly

21  established federal law erroneously or incorrectly...[r]ather that application must be

22  objectively unreasonable.'" *Clark*, 331 F.3d at 1068 (quoting *Lockyear v. Andrade*, 538 U.S.

23

24       [6]"[T]he *only* definitive source of clearly established federal law under AEDPA is the
25  holdings (as opposed to the dicta) of the Supreme Court as of the time of the state court
    decision. *Williams*, 529 U.S. at 412...While circuit law may be 'persuasive authority' for
26  purposes of determining whether a state court decision is an unreasonable application of
    Supreme Court law, *Duhaime v. Ducharme*, 200 F.3d 597, 600-01 (9th Cir. 1999), only the
27  Supreme Court's holdings are binding on the state courts and only those holdings need be
28  reasonably applied." *Clark*, 331 F.3d at 1069 (emphasis in original).

63 (2003)). When evaluating whether the state decision amounts to an unreasonable application of federal law, "[f]ederal courts owe substantial deference to state court interpretations of federal law...." *Cordova*, 346 F.3d at 929.

Under section 2254(d)(2), which involves purely factual questions resolved by the state court, "the question on review is whether an appellate panel, applying the normal standards of appellate review, could reasonably conclude that the finding is supported by the record." *Lambert*, 393 F.3d at 978: *see also Taylor v. Maddox*, 366 F.3d 992, 999 (9th Cir.), *cert. denied* 543 U.S. 1038 (2004)("a federal court may not second-guess a state court's fact-finding process unless, after review of the state-court record, it determines that the state court was not merely wrong, but actually unreasonable."). Section (d)(2) "applies most readily to situations where petitioner challenges the state court's findings based entirely on the state record. Such a challenge may be based on the claim that the finding is unsupported by sufficient evidence,...that the process employed by the state court is defective...or that no finding was made by the state court at all." *Taylor*, 366 F.3d at 999 (citation omitted). In examining the record under section 2254(d)(2), the federal court "must be particularly deferential to our state court colleagues...[M]ere doubt as to the adequacy of the state court's findings of fact is insufficient; 'we must be satisfied that *any* appellate court to whom the defect [in the state court's fact-finding process] is pointed out would be unreasonable in holding that the state court's fact-finding process was adequate.'" *Lambert*. 393 F.3d at 972 (quoting *Taylor*, 366 F.3d at 1000)(emphasis in original).

Once the federal court is satisfied that the state court's fact-finding process was reasonable, or where the petitioner does not challenge such findings, "the state court's findings are dressed in a presumption of correctness, which then helps steel them against any challenge based on extrinsic evidence, *i.e*., evidence presented for the first time in federal court."[7] *Taylor*, 366 F.3d at 1000: *see also* 28 U.S.C. §2254(c). Factual and credibility

---

[7]Under the AEDPA "a determination of a factual issue made by a State court shall be presumed to be correct." 28 U.S.C. §2254(e).  The "AEDPA spells out what this presumption

1   determinations by either state trial or appellate courts are imbued with a presumption of

2   correctness. 28 U.S.C. §2254(e)(1); *Pollard v. Galaza*, 290 F.3d 1030, 1035 (9th Cir. 2002);

3   *Bragg v. Galaza*, 242 F.3d 1082, 1078 (9th Cir. 2001), *amended* 253 F.3d 1150 (9th Cir.

4   2001). Furthermore, factual assertions made in support of properly exhausted claims in state

5   court cannot be altered or expanded upon without permission of the federal habeas court. *See*

6   *Baja v. Ducharme*, 187 F.3d 1075, 1079 (9th Cir. 1999). Consequently, a federal habeas court

7   can only look to the record before the state court in determining whether a state court

8   decision is contrary to clearly established federal law. *Holland v. Jackson*, 542 U.S. 649, 652

9   (2004)("[W]e have made clear that whether a state court's decision was unreasonable must

10  be assessed in light of the record the court had before it.")(citations omitted).

11       Both section 2254(d)(1) and (d)(2) may apply where the petitioner raises issues of

12  mixed questions of law and fact. Such questions "receive similarly mixed review; the state

13  court's ultimate conclusion is reviewed under section 2254(d)(1), but its underlying factual

14  findings supporting that conclusion are clothed with all of the deferential protection

15  ordinarily afforded factual findings under §§ 2254(d)(2) and (e)(1)." *Lambert*, 393 F.3d at

16  978.

17       D.      Ineffective Assistance of Council

18       In *Strickland v. Washington*, 466 U.S. 668, 687 (1984), the Supreme Court established

19  a two-part test for evaluating ineffective assistance of counsel claims. To establish that his

20  trial counsel was ineffective under *Strickland*, a petitioner must show: (1) that his trial

21  counsel's performance was deficient; and (2) that trial counsel's deficient performance

22  prejudiced petitioner's defense. *Ortiz v. Stewart*, 149 F.3d 923, 932 (9th Cir. 1998)(*citing*

23  *Strickland*, 466 U.S. at 688, 694).

24  ──────────────────

25  means: State-court fact-finding may be overturned based on new evidence presented for the
    first time in federal court only if such new evidence amounts to clear and convincing proof

26  that the state-court finding is in error....Significantly, the presumption of correctness and the
    clear-and-convincing standard of proof only come into play once..." it is found that the state

27  court reasonably determined the facts in light of the evidence presented in the state

28  proceeding. *Taylor*, 366 F.3d at 1000.

1    To establish deficient performance, Petitioner must show that "counsel made errors

2   so serious...that counsel's representation fell below an objective standard of reasonableness"

3   under prevailing professional norms. *Strickland*, 466 U.S. at 687-688. The relevant inquiry

4   is not what defense counsel could have done, but rather whether the decisions made by

5   defense counsel were reasonable. *Babbit v. Calderon*, 151 F.3d 1170, 1173 (9th Cir. 1998).

6   In considering this factor, counsel is strongly presumed to have rendered adequate assistance

7   and made all significant decisions in the exercise of reasonable professional judgment.

8   *Strickland*, 466 U.S. at 690. The Ninth Circuit "h[as] explained that '[r]eview of counsel's

9   performance is highly deferential and there is a strong presumption that counsel's conduct

10  fell within the wide range of reasonable representation.'" *Ortiz*, 149 F.3d at 932 (*quoting*

11  *Hensley v. Crist*, 67 F.3d 181, 184 (9th Cir. 1995)). "The reasonableness of counsel's

12  performance is to be evaluated from counsel's perspective at the time of the alleged error and

13  in light of all the circumstances, and the standard of review is highly deferential."

14  *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986). Additionally, "[a] fair assessment of

15  attorney performance requires that every effort be made to eliminate the distorting effects of

16  hindsight, to reconstruct the circumstances of counsel's challenged conduct , and to evaluate

17  the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689.

18    Even where trial counsel's performance is deficient, Petitioner must also establish

19  prejudice in order to prevail on his ineffective assistance of counsel claim. To establish

20  prejudice, Petitioner "must show that there is a reasonable probability that, but for counsel's

21  unprofessional errors, the result of the proceeding would have been different. A reasonable

22  probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694;

23  Under the prejudice factor, "[a]n error by counsel, even if professionally unreasonable, does

24  not warrant setting aside the judgment of a criminal proceeding if the error had no effect on

25  the judgment." *Id.* at 691. Because failure to make the required showing of either deficient

26  performance or prejudice defeats the claim, the court need not address both factors where one

27  is lacking. *Id.* at 697-700.

28    It is well settled that "[c]onclusory allegations [of ineffective assistance of counsel]

1  which are not supported by a statement of specific facts do not warrant habeas relief." *James*

2  *v. Borg*, 24 F.3d 20, 27 (9th Cir. 1994); *see also Strickland*, 466 U.S. at 690 (a petitioner

3  "making a claim of ineffective assistance must identify the acts or omissions of counsel that

4  are alleged not to have been the result of reasonable professional judgment"); *Ortiz*, 149 F.3d

5  at 933 (rejecting ineffective assistance of counsel claim where petitioner failed "to indicate

6  how he was prejudiced by counsel's failure..." to conduct cross-examination on a specific

7  issue); *United States v. Berry*, 814 F.2d 1406 (9th Cir. 1987)(defendant was not denied

8  effective assistance of counsel for failure to call out-of-state witnesses absent indication of

9  what witnesses would have testified to or how their testimony would have changed the

10  outcome of proceeding.); *Cranford v. Sumner*, 672 F.Supp. 453, 457 (D.Nev. 1987)("Aside

11  from the bald allegation that his attorney should have raised this claim but did not, the

12  petitioner has failed to demonstrate how his attorney's performance fell below the reasonable

13  level of professional competence required by *Strickland*.").

14  Further, a defendant has the ultimate authority to make fundamental decisions

15  regarding whether to plead guilty, waive a jury trial, testify in his or her own behalf, or take

16  an appeal. *Wainwright v. Sykes*, 433 U.S. 72, 93 n. 1 (1977)(Burger, C.J. concurring).

17  However:

18  [no decision of the Supreme Court] suggests,...that the indigent defendant has

19  a constitutional right to compel appointed counsel to press nonfrivolous points
requested by the client, if counsel, as a matter of professional judgment,
decides not to present those points.

20

21  *Jones v. Barnes*, 463 U.S. 745, 751 (1983). To require otherwise would "seriously

22  undermine[] the ability of counsel to present the client's case in accord with counsel's

23  professional evaluation." *Id.* The professional judgment and evaluation every defendant is

24  entitled to is an examination of the record, research of the law, and the marshaling of

    arguments on behalf of the defendant. *Douglas v. California*, 372 U.S. 353, 358 (1963).

25  Additionally, under the AEDPA, the federal court's review of the state court's

26  decision is subject to another level of deference. *Bell v. Cone*, 535 U.S. 685, 689-699 (2002).

27  In order to merit habeas relief, therefore, Petitioner must make the additional showing that

28

1  the state court's ruling that counsel was not ineffective constituted an unreasonable

2  application of *Strickland*.   *See* 28 U.S.C. §2254(d)(1); *see also Harrington v. Richter,* __

3  U.S. __, 131 S.Ct. 770, 788 (Jan. 19, 2011) ("Federal habeas courts must guard against the

4  danger of equating unreasonableness under Strickland with unreasonableness under §

5  2254(d). When § 2254(d) applies, the question is not whether counsel's actions were

6  reasonable. The question is whether there is any reasonable argument that counsel satisfied

7  *Strickland's* deferential standard."); *West v. Schriro*, 2007 WL 4240859, *7 (D.Ariz. Nov.

8  29, 2007).

9  **III.   Analysis**

10        A.    Timeliness

11        Respondents argue that the Petition is untimely filed because the Arizona Court of

12  Appeals entered its order denying Petitioner's Petition for Review in the post-conviction

13  relief proceedings on March 25, 2008–more than 365 days before the Petition was file-

14  stamped by the Clerk of this Court on March 30, 2009. (*See* Answer, pp. 7-14).

15        Under section 2244(d)(2), "[t]he time during which a properly filed application for

16  State post-conviction or other collateral review with respect to the pertinent judgment or

17  claim is pending shall not be counted toward any period of limitation under..." section

18  2244(d). 28 U.S.C. §2244(d)(2). Respondents concede that the AEDPA limitations period

19  was "immediately tolled..." upon the conclusion of direct review because "Petitioner initiated

20  post-conviction proceedings before his conviction became final." (Reply, p. 8 (*citing* 28

21  U.S.C. §2244(d)(2)). According to Respondents, the statutory tolling period ended on March

22  25, 2008 when the Arizona Court of Appeals denied post-conviction relief. (*Id.*). Further

23  according to Respondents, "to be timely, Petitioner was required to file the [federal

24  Petition]...by March 25, 2009....But Petitioner did not file the [Petition]...until March 30,

25  2009", the date on which the Petition was file-stamped by the Clerk of the Court. (*Id.*

26  (citation omitted)). Respondents are correct that the March 25, 2009 is 365 days after March

27  25, 2008. *See Patterson,* 251 F.3d at 1246-47 (discussing method for computing the 365-day

28  period for purposes of the AEDPA statute of limitations).

1    Petitioner counters that his Petition is timely filed under the "prison mailbox rule."

2    (Reply, p.5) Alternately, he argues that the statutory tolling period did not end until the May

3    12, 2008 filing of the mandate with regard to his post-conviction relief proceeding.  (*See*

4    Reply, pp. 4-5).  If tolling ceased when the mandate was filed, then Petitioner had until May

5    12, 2009 to file his federal habeas petition.

6    It is well-settled that under the "mailbox rule," an incarcerated *pro se* prisoner's

7    pleading is deemed filed at the moment it is delivered to prison officials for mailing. *Houston*

8    *v. Lack*, 487 U.S. 266, 270 (1988); *see also Miles v. Prunty*, 187 F.3d 1104, 1106 n. 2 (9th

9    Cir. 1999) (extending the "mailbox rule" to habeas petitions filed under AEDPA).

10    The instant Petition contains Petitioner's statement that his action is timely because

11    "the last decision in my case by a [sic] Arizona Court was in [sic] March 25th 2008, therefore

12    I am within the one year time line." (Petition, p.12).  The Petition also contains Petitioner's

13    declaration that he placed the Petition "in the prison mailing system on 3-20-2009...." (*Id.*).

14    With his Reply, Petitioner submits a document which he identifies as the prison mail-room

15    log for out-going mail showing an entry under Petitioner's name on March 23, 2009 and that

16    the mail was to be sent to this Court.  (Reply, Exh. C).  Review of the Court's docket reflects

17    that Petitioner has no other pending matter before this Court.  *See  See* Fed.R.Evid. 201;

18    *Reyn's Pasta Bella, LLC v. Visa USA, Inc.,* 442 F.3d 741 (9th Cir. 2006) (court may take

19    judicial notice of court filings and other matters of public record).  The record supports the

20    conclusion that, under the "mailbox rule," Petitioner's Petition is deemed to have been filed

21    no later than March 23, 2009–within the March 25, 2009 deadline calculated by

22    Respondents. *See Houston,* 487 U.S. at 270.  Consequently, the Petition is timely filed.[8]

23

24    [8]Because the record reflects that the Petition was given to authorities for mailing
25    before March 25, 2009–the deadline calculated by Respondents and the earliest deadline
      suggested by the parties, the Court need not determine whether that is the proper deadline *vis*
26    *a vis* the alternate deadline of May 12, 2009 advanced by Petitioner.  However, the District
      Court for the District of Arizona has held that in cases, like the instant Petitioner's, where the
27    appellate court granted review and denied relief on a petition for review of the trial court's
28    denial of post-conviction relief and where the petitioner did not seek reconsideration or file

B.    Petitioner's Grounds for Relief

Respondents argue that Grounds I, II, and V are precluded from federal habeas review because they are procedurally defaulted.  (Answer, p. 17).  Respondents also argue that Ground IV is procedurally defaulted in whole or in part, and, alternatively, that some portions of Ground IV are without merit.  (*Id.* at pp. 17-18).

1.    Petitioner's Ground I

Petitioner claims that the trial court violated his constitutional right under the Sixth and Fourteenth Amendments to confront witnesses against him with regard to witness Voss, who was in Petitioner's car at the time of the accident.  (Petition, p.6).  According to Petitioner, the court dismissed Ms. Voss "after a recess for lunch making her unavailable for re-direct cross examination" after another prosecution witness testified about statements Ms. Voss made.  (Petitioner's Amendment and Clarification, p.2).  Petitioner opines that Ms. Voss' testimony was hearsay.  (*Id.*; *see also* Petition, p.6).

Respondents contend the claim is procedurally defaulted because the state court denied Petitioner's claim on procedural grounds.

Petitioner argued on direct appeal that the trial court violated his state and federal constitutional right to confront witnesses against him by permitting police officer Charles Foley to testify about statements Ms. Voss made to him at the scene because the court permitted such testimony after the court had excused Ms. Voss as a witness.  (Answer, Exh. P, pp. 17-19).   Petitioner opined that because Ms. Voss was no longer a witness when Officer Foley testified, he was unable to confront her about her statements to Officer Foley.  (*Id.* at p. 18).  Petitioner also conceded that he "waive[d] the issue by failing to object on constitutional confrontation clause grounds."  (*Id.*).

The appellate court stated that Petitioner "did not object below to Foley's testimony

_____

a petition for review with the Arizona Supreme Court, the statutory tolling period ended when the Arizona Court of Appeals issued the mandate. *Celaya v. Stewart,* 691 F.Supp.2d 1046, 1052-1056 (D.Ariz. 2010) (distinguishing *Hemmerle v. Schriro,* 495 F.3d 1069 (9th Cir. 2007)).  Thus, under this line of cases, Petitioner's Petition is timely as well.

1  on that [*i.e.*, the Confrontation Clause] ground.  [Petitioner's] hearsay objection did not

2  preserve this new argument."[9]  (Answer, Exh. I, p. 8).  The state court acknowledged that

3  when evidence objected to on one ground is admitted over objection, other grounds not

4  specified are waived, absent fundamental error.  (*Id.* (*citing State v. Hernandez*, 170 Ariz.

5  301, 306-07 (App. 1991)).  The court went on to determine that no fundamental error

6  occurred, and even if there was error, such error was harmless.  (*Id.* at pp. 8-10).  Petitioner

7  raised the issue in his Petition for Review (Answer, Exh. G, pp.6-8), and the Arizona

8  Supreme Court denied review (Answer, Exh. H), thus rendering the appellate decision the

9  last-reasoned state court decision addressing the claim.  *See Ylst,* 501 U.S. at 802.

10  Generally, where state procedures require contemporaneous objection to preserve the

11  issue for appeal, failure to object bars federal habeas review under the independent and

12  adequate state grounds doctrine.  *See Wainwright,* 433 U.S. at 86-91.  Nonetheless, in similar

13  situations to Petitioner's where the Arizona appellate court necessarily reviewed the merits

14  of the claim in determining there was no fundamental error,[10] the District of Arizona has

15

16  [9]Under Rule 16.1 of the Arizona Rules of Criminal Procedure:

17     \*\*\*

18  b.     Making of Motions Before Trial. All motions shall be made no
         later than 20 days prior to trial, or at such other time as the court
19       may direct. The opposing party shall have 10 days within which
         to file a response, unless the opposing party waives response.
20       Lack of jurisdiction may be raised at any time.

21     \*\*\*

22  c.     Any motion, defense, objection, or request not timely raised
         under Rule 16.1(b) shall be precluded, unless the basis therefor
23       was not then known, and by the exercise of reasonable diligence
         could not then have been known, and the party raises it promptly
24       upon learning of it.

     \*\*\*

25  Ariz.R.Crim.P. 16.1(b),(c).

26

27  [10]Although fundamental error is a concept that arises under Arizona state law, the
    Arizona Supreme Court has recognized that "'[i]t usually, if not always, involves the loss of
28  federal constitutional rights.'" *State v. Gendron,* 168 Ariz. 153, 155, 812 P.2d 626, 628

1   questioned whether such a claim is procedurally defaulted and, has gone on to address the

2   merits. *See Church v. Schriro*, 2008 WL 2168998, *16 (D.Ariz. May 22, 2008) ("However,

3   it is arguable that the claim was procedurally barred for purposes of habeas review because

4   the state court concluded the claim was only procedurally barred absent fundamental error;

5   it implicitly addressed the merits of the claim by concluding there was no fundamental error

6   and, accordingly, that the claim was precluded.") (footnote omitted); *Date v. Schriro,* 619

7   F.Supp.2d 736, 774 (D.Ariz. 2008) (where petitioner failed to object at trial but raised the

8   claim on direct appeal and Arizona appellate court reviewed claim for fundamental error,

9   "the Court of Appeals' fundamental error review is sufficient to exhaust Petitioner's..."

10  claim); *but see Lopez v. Ryan,* 2009 WL 3294876, *11 (D. Ariz. Oct. 14, 2009) (the state

11  "court's limited consideration of the claim's merits in connection with its fundamental error

12  review does not nullify the procedural bar.").   Ninth Circuit case law tends to support

13  consideration of the claim on the merits. *See Walker v. Endell*, 850 F.2d 470, 474 & n.4 (9th

14  Cir. 1987) (holding that review for plain error is a ruling on the merits of a claim); *Huffman*

15  *v. Ricketts*, 750 F.2d 798 (9th Cir. 1984) (finding no bar to federal review where Arizona

16  Court of Appeals decided appellant's federal constitutional claim vis-à-vis fundamental error

17  review after noting failure to object at trial); *Cf. Comer v. Schriro*, 480 F.3d 960, 984 (9th Cir.

18  2007) ("we will only consider a claim to be exhausted by Arizona's fundamental error review

19  if it was explicitly noted in the briefs presented to the state appellate court or the state court

20  mentions it is considering the claim *sua sponte*."). Moreover, "[r]egardless of any procedural

21  default of the claim, the claim may [nonetheless] be denied on the merits." *Church,* 2008

22  WL 2168998 at *16; *see also* 28 U.S.C. 2254(b)(2) ("[a]n application for a writ of habeas

23

24  (1991) (citation omitted).  Fundamental error is "error going to the foundation of the case,
    error that takes from the defendant a right essential to his defense, and error of such

25  magnitude that the defendant could not possibly have received a fair trial." *Henderson,* 210
    Ariz. at 567, 115 P.2d at 607 (citation omitted). The instant record reflects that in finding no

26  fundamental error, the Arizona Court of Appeals necessarily considered the merits of

27  Petitioner's claim, albeit pursuant to a higher standard.

28

1    corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust

2    the remedies available in the courts of the State.").

3                            a.      The state court proceeding

4           In Petitioner's case, the Arizona Court of Appeals found "no Confrontation Clause

5    error, fundamental or otherwise, in the trial court's admission of Foley's testimony about...

6    [Voss'] statement at the accident scene."  (Answer, Exh. I, p. 10).  The court pointed out,

7    *inter alia,* that:

8           Foley testified that he had made an investigative report that specifically
            referred to...[Voss'] statement.  Pursuant to Rule 15.1, Ariz. R. Crim.P., 16A,
9           A.R.S., the state was required to disclose that report to Coppess before trial.
            Nothing in the record suggests the state failed to do so or that Coppess was
10          otherwise unaware of...[Voss'] statement before Foley testified.  Thus, he
            could have cross-examined her about that statement.  Likewise, although...
11          [Voss'] testimony preceded Foley's, Coppess could have called [Voss] in his
            case-in-chief after the state rested.  As the Supreme Court stated in *Crawford*
12          *v. Washington,* 541 U.S. 36, 59 n.9...(2004), "when the declarant appears for
            cross-examination at trial, the Confrontation Clause places no constraints at all
13          on the use of [her] prior testimonial statements."

14   (*Id.* at pp. 9-10).  Because the Arizona Supreme Court denied review of this issue without

15   comment, the appellate court's decision is the last-reasoned state court decision on this issue.

16                           b.      Analysis

17          "The Confrontation Clause provides two types of protections for a criminal defendant:

18   the right to physically face those who testify against him, and the right to conduct cross-

19   examination." *Pennsylvania v. Ritchie,* 480 U.S. 39, 51 (1987) (plurality opinion) (*citing*

20   *Delaware v. Fensterer,* 474 U.S. 15, 18-19 (1987)). The United States Supreme Court has

21   held that the Confrontation Clause bars admission of "testimonial statements"[11] of a witness

22   who does not appear at trial, unless the declarant is unavailable to testify and the defendant

23   has previously had the opportunity to cross-examine the declarant.  *Crawford,* 541 U.S. 36.

24   The Supreme Court has recognized, however, that "when the declarant appears for cross-

25   examination at trial, the Confrontation Clause places no constraints at all on the use of his

26

27          [11]"'Testimonial statements' include statements taken by police officers during their
     investigations...." *United States v. Hall,* 419 F.3d. 980, 985 (9th Cir. 2005) (*citing Crawford,*
28   541 U.S. at 52).

[or her] prior testimonial statements." *Id.,* at 59 n.9; *see also Coy v. Iowa,* 487 U.S. 1012, 1016 (1988) ("the Confrontation Clause guarantees the defendant a face-to-face meeting with witnesses appearing before the trier of fact.").

On the instant record, Petitioner had a full and fair opportunity to prepare for and anticipate Ms. Voss' testimony as well as any out-of-court statements she made that might have been potentially used against him at trial.  He also had the opportunity to subpoena her as a witness  and establish that she was an adverse witness which would have permitted further opportunity for cross-examination.  *See Cochran v. Adams,* 2007 WL 2481456, *25 (S.D. Cal. Aug. 28, 2007) (although state did not call petitioner's "accuser" as a witness, petitioner had an opportunity to confront his accuser when he called her as a defense witness and, thus, "the fundamental purpose of the Confrontation Clause was served.").  Consequently, the Arizona court's resolution of Petitioner's claim was not contrary to, or an unreasonable application of, Supreme Court precedent.  Nor has there been a showing that the state court's decision was based on an unreasonable determination of the facts in light of the evidence presented.

c.     Recommendation: Ground I

The Magistrate Judge recommends that the District Court deny Ground I on the merits.

2.     Ground II

Petitioner claims that the trial court violated his right to a jury trial under the Sixth and Fourteenth Amendments when the court imposed an aggravated sentence on facts without a jury determination of aggravating factors. (Petition, p. 7 (citing *Blakely v. Washington,* 542 U.S. 296 (2004) and *Apprendi v. New Jersey,* 530 U.S. 466, 490 (2000))).

Respondents argue that the claim is precluded by independent and adequate state bar "because the state courts found those claims precluded under state law."  (Answer, p.17). This Court presumes that Respondents refer to the appellate court's statement that "[b]ecause Coppess failed to object below to the trial court's imposition of aggravated sentences, we review solely for fundamental error." (Answer, Exh. I, p. 15 *(citing  Martinez*, 210 Ariz. at

580 n.2, 115 P.3d at 620 n.2 ("Defendants who fail to object to error at trial do not, strictly speaking 'waive' their claims.  Rather, defendants who fail to object to an error below forfeit the right to obtain appellate relief unless they prove that fundamental error occurred.")).

The record is clear that Petitioner raised the *Blakely* issue on direct appeal (Answer, Exh. P, pp. 29-31; Exh. A, pp. 13–19).  The appellate court, after noting the state's argument that Petitioner waived the claim for failure to object at sentencing, went on to address the *Blakely* issue on the merits and, in doing so, ruled in Petitioner's favor thereby vacating Petitioner's aggravated sentences and remanding the matter for resentencing.  (Answer, Exh. A at pp. 13-19).  Thereafter, the Arizona Supreme Court granted the State's Petition for Review with regard to the *Blakely* issue and remanded the matter to the appellate court "for reconsideration in light of *State v. Martinez,* 210 Ariz. 578 (2005), and *State v. Henderson,* 210 Ariz. 561 (2005)."  (Answer, Exh. H).

In its February 28, 2006 decision on remand, the appellate court noted Petitioner's failure to object to the trial court's imposition of aggravated sentences, stated that it would review for fundamental error due to Petitioner's failure to object below, and found "no error, fundamental or otherwise, relating to the..." *Blakely* issue.  (Answer, Exh. I, pp. 16-17). *See Mullins v. Schriro,* 2007 WL 4468718 *22 (D.Ariz. Dec. 17, 2007) ("because Petitioner did not object at trial to the failure to have a jury determine the aggravated factors, any *Blakely* violation was properly reviewed [by the Arizona court] for fundamental error....")(footnote omitted).  In finding no fundamental error, the Arizona court necessarily considered the merits of Petitioner's claim, albeit pursuant to a higher standard.  In light of the discussion in section III.B.1. *supra,* at pp.20-22, the Court will consider the merits of Petitioner's claim regardless of any procedural default.

a.    The state court proceeding

In it's May 2005 decision, the Arizona Court of Appeals acknowledged Petitioner's prior felony conviction was exempt from "the dictates of the Sixth Amendment trial-by-jury requirement." (Answer, Exh. A, p. 16).  The court found that although "the aggravating factor of financial harm to the victims was found by the jury in its guilty verdicts on the

criminal damage counts," other aggravating factors cited by the sentencing "court were not found by the jury beyond a reasonable doubt nor can they be said to be implicit in the jury's verdicts." (*Id.* at p. 18). Thereafter, the Arizona Supreme Court remanded the matter "for reconsideration in light of *State v. Martinez,* 210 Ariz. 578 (2005), and *State v. Henderson,* 210 Ariz. 561 (2005)." (Answer, Exh. H).

In its February 2006 decision after remand from the Arizona Supreme Court, the Arizona Court of Appeals held that once the trial court found that Petitioner's prior conviction was an aggravating circumstance, the court was entitled to consider any other legal aggravating factor in imposing sentence within the applicable range and, thus, there was no error in the trial court's imposition of aggravated sentences without submitting the matter to a jury. (Answer, Exh. I, pp. 15-17).[12] The appellate court's February 2006 decision is the last-reasoned state court decision addressing the *Blakely* claim.

b.    Analysis

The Sixth Amendment to the United States Constitution guarantees a criminal defendant the right to a jury. This right continues through the sentencing process, *i.e.*, a defendant has the right to demand that a jury find the existence of any specific fact that the law makes essential to his punishment. *Blakely*, 542 U.S. at 301.[13]

> Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.

*Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000)(emphasis added). The Supreme Court explained in *Blakely* that "the 'statutory maximum' for *Apprendi* purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or*

---

[12]The appellate court also noted that Petitioner did not challenge the trial court's finding of his prior convictions. (Answer, Exh. I, p.16).

[13]Although Petitioner was sentenced before the Supreme Court decided *Blakely*, *Blakely* applies retroactively because Petitioner's criminal case was not yet final when the *Blakely* decision was issued. *See Schardt v. Payne,* 414 F.3d 1025, 1033 (9th Cir. 2005) (*citing Griffith v. Kentucky,* 479 U.S. 314, 322 (1987); *State of Arizona v. Febles*, 115 P.3d 629, 635 (Ariz. App. 2005).

*admitted by the defendant.*"  *Blakely,* 542 U.S. at 303 (citations omitted) (emphasis in original).

The Arizona Supreme Court, in applying *Blakely* and *Apprendi* to Arizona's sentencing scheme, has held that the statutory maximum for purposes of *Apprendi* and *Blakely* analysis is the presumptive sentence established for a defendant's crime.  *State v. Brown*, 209 Ariz. 200, 99 P.3d 15, 18 (2004); *see also State v. Brown*, 212 Ariz. 225, 129 P.3d 947, 949 (2006). However, nothing in the history of the right to a jury trial:

> suggests that it is impermissible for judges to exercise discretion-taking into consideration various factors relating both to offense and offender-in imposing a judgment *within the range* prescribed by statute. We have often noted that judges in this country have long exercised discretion of this nature in imposing sentence *within statutory limits* in the individual case.

*Apprendi*, 530 U.S. at 481 (emphasis in original)(*citing Williams v. New York*, 337 U.S. 241, 246 (1949)). In the exercise of this time-honored discretion, a judge may consider "sentencing factors", e.g., circumstances "which may be either aggravating or mitigating in character, that supports a specific sentence *within the range* authorized by the jury's finding that the defendant is guilty of a particular offense." *Martinez*, 210 Ariz. at 581, 15 P.3d at 621 (emphasis in original) (*citing Apprendi*, 530 U.S. at 494 n. 19); *see also United States v. Booker,* 543 U.S. 220 (2005) (jury must determine facts that raise a sentencing ceiling). "Thus, upon the finding of an aggravating factor the 'statutory maximum' then becomes not the presumptive term, but the maximum aggravated sentence allowed by the relevant sentencing statute." *Kemp v. McWilliams,* 2007 WL 128782, *3 (D. Ariz. Jan. 12, 2007).

In sum, the aggravating factor of a prior conviction is *Blakely*-exempt from the Sixth Amendment's jury trial requirement. *Blakely*, 542 U.S. at 301 ("'Other than the fact of a prior conviction,....'")(*quoting Apprendi*, 530 U.S. at 490); *United States v. Thomas*, 447 F.3d 1191, 2000 (9th Cir. 2006). Other aggravating factors can be *Blakely*-compliant, i.e., found by a jury or admitted by a defendant. Once a single aggravating factor has been properly established as either *Blakely*-exempt or *Blakely*-compliant, the trial court may find and consider additional aggravating factors in its determination of the appropriate sentence to be imposed within the given statutory sentencing range. *Martinez*, 210 Ariz at 585, 115

P.3d at 625 (emphasis added); *see also Apprendi,* 530 U.S. at 481.

In Petitioner's case, the appellate court found that:

> Coppess was sentenced to twenty years' imprisonment on the second-degree murder conviction. The sentencing range for that conviction was ten years (minimum) to twenty-two years (maximum), with a presumptive term of sixteen years. A.R.S. §§13-701(A), 13-1104. On four of the aggravated assault convictions, Coppess received aggravated, ten-year prison terms. The sentencing range for those convictions was five years (minimum) to fifteen years (maximum), with a presumptive term of 7.5 years. A.R.S. §13-604(I).

(Answer, Exh. I, p.14 n.6). When sentencing Petitioner, the trial court clearly named a *Blakely*-exempt sentencing factor: Petitioner's prior felony conviction. (Answer, Exh. E, p. 28; *see also* Answer, Exh. I, pp. 14-15). The state court's factual findings must be accepted as correct unless the Petitioner can rebut them with clear and convincing evidence to the contrary. 28 U.S.C. §2254(e)(1); *Marshall v. Taylor*, 395 F.3d 1058, 1062 n. 19 (9th Cir. 2005). The trial court's consideration of aggravating factors, including Petitioner's prior conviction in imposing an aggravated sentence within the range prescribed by statute did not violate *Blakely* given that prior convictions are *Blakely*-exempt and, thus, do not require submission to a jury. *See Blakely*, 542 U.S. at 301 ("'Other than the fact of a prior conviction,....'")(*quoting Apprendi*, 530 U.S. at 490). Further, the state appellate court on remand upheld Petitioner's sentences because they did not violate *Blakely* in light of the fact of the trial court's consideration of Petitioner's prior conviction. On this record, the state court's decision upholding Petitioner's sentences was not contrary to, or an unreasonable application of, clearly established federal law as determined by the United States Supreme Court. *See Jernigan v. Tucker,* 2007 WL 163079 (D.Ariz. Jan. 18, 2007) (denying habeas petition raising *Blakely* claim because "[o]nce one [prior] conviction has been established, the judge is free to impose the maximum sentence..." within the applicable sentencing range); *Holderman v. Schriro,* 2007 WL 3256473 (D.Ariz. Nov. 2, 2007) (same). Nor did the state court's proceeding result in a decision that was based on an unreasonable determination of the evidence presented.

### c.   Recommendation

The Magistrate Judge recommends that the District Court deny Ground II on the

merits.

### 3.      Ground III

Petitioner argues that the trial court violated his right to due process under the Fourteenth Amendment with regard to his ability to present expert testimony from Dr. Richard Hinton, a psychologist. (Petition, p. 8).

Petitioner intended to call Dr. Hinton to testify that Petitioner's post-accident behavior, which included fleeing the scene, was due to Petitioner's alleged post-traumatic stress disorder and "not a flight reaction which the prosecutor stated as a proff [sic] of guilt." (Petition, p. 8). Prior to Dr. Hinton taking the stand, the prosecutor noted that Dr. Hinton

> had based his diagnosis, at least in part, on Coppess's prior "bad experiences in prison" and argued the state should be permitted to question Hinton about all of those experiences. The trial court initially noted that the fact that Coppess's experiences had occurred in prison 'would be hugely probative to any underlying opinion that [Hinton] might have." On direct questioning by the court outside the jury's presence, Hinton stated that his opinion was not based on '[t]he fact of prison in and of itself,' but rather on "[e]vents which occurred [to Coppess] while in prison." When asked what occurrences he was focusing on, Hinton responded: "[Coppess's] life was being threatened. He was in danger. He had to defend himself. He had to be vigilant."

(Answer, Exh. I, p. 4) The trial court ruled that if Petitioner called Dr. Hinton to testify, the State would be permitted to inquire about the prison setting of Petitioner's experiences. (*Id.* at pp. 4-5; Petition, p.8). Petitioner maintains that, based on the trial court's ruling, he decided not to call Dr. Hinton as a witness at trial. (Answer, Exh. I, p.5; Petition, p.8).

On direct appeal, Petitioner argued that the trial court "abused its discretion..." in ruling as it did regarding Dr. Hinton's testimony. (Answer, Exh. P, pp. 8-14). The appellate court  rejected Petitioner's claim as follows in pertinent part:

> In view of Hinton's statement that, "[e]vents which occurred while in prison were part of [his] opinion," we cannot say the trial court abused its discretion in finding "the whole idea of prison...quite relevant" and allowing the state to probe that topic on cross-examination should Hinton testify. *See* Ariz.R.Evid. 705, 17A A.R.S. ("The expert may in any event be required to disclose the underlying facts or data on cross-examination.").

(Answer, Exh. I, p.6).

To exhaust a federal claim, the petitioner must fairly present the claim in state court. *Fields v. Waddington,* 401 F.3d 1018, 1020 (9th Cir. 2005). A petitioner fairly presents his

claims to the state court "only if he alerted the state court that his claim[] rested on the federal Constitution....In order to alert the state court, a petitioner must make reference to provisions of the federal Constitution or must cite either federal or state case law that engages in a federal constitutional analysis." *Id.* at 1021 (citations omitted); *see also Castillo v. McFadden,* 399 F.3d 993, 999 (9th Cir. 2005)("In short, the petitioner must have either referenced specific provisions of the federal constitution or cited to federal or state cases involving the legal standard for a federal constitutional violation."). Further, it is "not enough to raise a state claim that is analogous or closely similar to a federal claim." *Castillo,* 399 F.3d at 999. Thus, where a petitioner raises an issue of exclusively state evidentiary law to the state court and fails to apprise the state court that he is also raising a federal claim, he has failed to fairly present his federal claim. *See Id.* at 1002. Moreover, "citation of a relevant federal constitutional provision in relation to some other claim does not satisfy the exhaustion requirement." *Id.* at 999. Here, Petitioner argued on direct appeal that the trial court "abused its discretion" when it ruled as it did concerning Dr. Hinton's testimony. (Answer, Exh. P, p.8). Petitioner's brief filed on direct appeal did not claim a Fourteenth Amendment due process violation. He did not specifically reference any provision of the United States Constitution with regard to the ruling concerning Dr. Hinton's testimony. (*See Id.* at pp. 8-14). Nor did he cite federal cases with regard to this issue. (*Id.*). Further, none of the state cases relied on by Petitioner on the issue of Dr. Hinton's testimony "involved the express invocation, explanation or discussion of due process standards."[14] *Castillo,* 399 F.3d

---

[14]Petitioner cited the following cases in the following order in his appellate brief regarding the trial court's ruling concerning Dr. Hinton's testimony: *Logerquist v. McVey,* 196 Ariz. 470, 1 P.3d. 113 (2000) (medical malpractice action wherein court determined whether *Frye* standard applied to expert testimony and also declined to adopt *Daubert* test for determining admissibility of scientific evidence); *State v. Stabler,* 162 Ariz. 370, 374, 783 P.2d 816, 820 (App. 1989)(criminal appeal wherein court found no prosecutorial misconduct concerning cross-examination of expert under Arizona Rules of Evidence); *Sharman v. Skaggs Companies, Inc.,* 124 Ariz. 165, 169, 602 P.2d 833, 837 (App. 1979) (personal injury action wherein court held that it was improper to permit cross-examination of an expert witness about a report on which the expert had not relied in forming his opinion because such report was inadmissible hearsay under the facts of that case); *State v. Holsinger,* 124 Ariz.

at 1001.   Moreover, the Arizona Court of Appeals addressed the issue concerning Dr. Hinton's testimony as briefed and argued by Petitioner "and issued its own reasoned state judgment.   It rejected on state law grounds [Petitioner's]...argument...."   *Id.* at 1002 (petitioner failed to exhaust claim because he did not alert the state court that he was raising a federal constitutional claim).   Because Petitioner did not fairly present a Fourteenth Amendment due process claim to the state court with regard to Dr. Hinton's testimony, his claim is not exhausted.

Petitioner's return to state court to raise a Fourteenth Amendment due process claim would be futile given that the claim is precluded as waived under Ariz.R.Crim.P. 32.2(a)(3) because it was not presented on direct appeal.   Further, presentation of such claim in a second post-conviction relief proceeding would be untimely under Ariz.R.Crim.P. 32.4.   *See Beaty,* 303 F.3d at 987 (a state post-conviction action is futile when it is time-barred).   Nor does the claim qualify for any of the timeliness exceptions.   *See* Ariz.R.Crim.P. 32.1(d)-(h).   Thus, any additional petition would be subject to summary dismissal.   *See State v. Rosario,* 195 Ariz. 264, 266, 987 P.2d 226, 228 (App. 1999); *State v. Jones,* 182 Ariz. 432, 897 P.2d 734 (App. 1995); *Moreno v. Gonzales,* 192 Ariz. 131, 135, 962 P.2d 205, 209 (1998) (timeliness is a separate inquiry from preclusion).   Under these circumstances, Petitioner's Fourteenth Amendment due process claim is procedurally defaulted.[15]   *Park v. California,* 202 F.3d

---

18, 601 P.2d 1054 (1979)(criminal appeal wherein court held prosecutor's questioning of witness regarding defendant's prior convictions was  improper as such questioning was not permitted by either Ariz.R.Evid. 404(a) and (b)).

[15]Because this claim is procedurally defaulted pursuant to Rule 32.4(a), Ariz.R.Crim.P., this Court need not determine whether the claim is of "sufficient constitutional magnitude" to require a knowing, voluntary, and intelligent waiver such that the claim is precluded pursuant to *Cassett*. Moreover, the procedural timeliness bar of Rule 32.4(a), Ariz.R.Crim.P., is clear, consistently applied, and well established. *Powell v. Lambert*, 357 F.3d 871 (9th Cir.2004); see e.g., *Rosario*, 195 Ariz. 264, 987 P.2d 226 (where petition did not raise claims pursuant to Rule 32.1(d) through (g), the petition could be summarily dismissed if untimely); *Moreno*, 192 Ariz. 131, 962 P.2d 205 (timeliness provision of Rule 32.4(a) became effective September 20, 1992); *State v. Jones*, 182 Ariz. 432, 897 P.2d 734 (App.1995) (Rule 32.4(a) was amended "to address potential abuse by

- 30 -

1146, 1150-51 (9th Cir. 2000) (federal habeas review is precluded where petitioner has not raised his claim in the state courts and the time for doing so has expired).

Petitioner opines in his Supplemental Reply, that a "jailhouse lawyer" who assisted in preparing his habeas Petition mistakenly indicated that Petitioner wanted to call *Dr. Hinton.* (Petitioner's Supplemental Reply, pp. 3-4). According to Petitioner, Ground III should refer to *Dr. Comer* instead of *Dr. Hinton*. Petitioner also asserts that his trial counsel confused Dr. Comer, whose testimony was allegedly favorable, with Dr. Hinton whose testimony was not favorable because it could open the door to Petitioner's prior prison experiences. Petitioner claims that trial counsel called the wrong doctor to testify. Petitioner's clarification to Ground III as set forth in his Supplemental Reply appears to raise an ineffective assistance of counsel claim, not a Fourteenth Amendment due process claim as raised in Ground III of the instant Petition. Further, in Ground IV of his federal habeas Petition, Petitioner raises an ineffective assistance of counsel claim alleging, *inter alia,* that counsel was ineffective for failing to call Dr. Comer to testify. (Petition, p.9). The record also reflects that in his PCR Petition, Petitioner argued that trial counsel was ineffective for failing to call *Dr. Comer* to testify. (Answer, Exh. L, pp. 4, 6-7).

A plain reading of Petitioner's factual basis in support of Ground III as set forth in the Petition, that was signed by Petitioner, is that Petitioner's Fourteenth Amendment claim is directed precisely at the trial court's ruling concerning Dr. Hinton. (*See* Petition, p.8). Further, Petitioner's assertions in his Supplemental Reply concerning the failure to call Dr. Comer to testify raise an ineffective assistance of counsel claim and not a Fourteenth Amendment due process claim on this issue. Perhaps Petitioner meant this portion of his Supplemental Reply to address Ground IV. In any event, Petitioner's position that Ground III was intended to address Dr. Comer and not Dr. Hinton, does not save Ground III. The record reflects that Petitioner never raised a Fourteenth Amendment due process claim in

defendants caused by the old rule's unlimited filing periods"); *see also Wagner v. Stewart,* 2008 WL 169639, *9 (D.Ariz. Jan. 16, 2008).

state court with regard to the failure to call Dr. Comer to testify.   Instead, his PCR counsel raised a Sixth Amendment ineffective assistance of counsel claim and the state court addressed the claim on Sixth Amendment grounds.  (*See* Answer, Exh. L, M).  Despite any alleged confusion between Dr. Comer and Dr. Hinton on behalf of any of Petitioner's counsel, on the instant record, Petitioner has failed to establish cause for failing to fairly present the state court with a Fourteenth Amendment due process claim with regard to either Dr. Hinton's or Dr. Comer's testimony.  Because Petitioner has failed to establish cause sufficient to excuse his procedural default, the court need not consider prejudice.  *Cook,* 538 F.3d at 1028 n.13. Nor is there a showing that would support a finding of a constitutional violation that has probably resulted in the conviction of someone who was actually innocent of the offenses at issue.

Consequently, Ground III is procedurally defaulted and, thus, barred from federal habeas review.

<u>a.      Recommendation: Ground III</u>

The Magistrate Judge recommends that the District Court dismiss Ground III as procedurally defaulted.

<u>4.      Ground IV</u>

Petitioner argues that his Sixth Amendment right to counsel was violated because his trial counsel was ineffective for failing to: (1) call Dr. Hinton to testify at trial regarding Petitioner's PTSD; (2) object to admission of evidence regarding Petitioner's blood alcohol level; (3) inform Petitioner of a plea offer made by the State prior to a July 25, 2003 hearing; (4) find or call witnesses who made statements to the police that Petitioner was not driving the car; and (5) call Dr. Comer to testify about Petitioner's mental competency and mitigating factors given that "Dr. Comer examined the Petitioner for 8 hours and had a diagnose's [sic] of frontal lobe brain injury...."  (Petition, p.9).

Respondents concede that Petitioner raised Sub-claims 1 through 3 in his PCR Petition.  (Answer, pp. 17-31).  However, they argue that Sub-claims 1 through 3 are procedurally defaulted because Petitioner did not seek review by the Arizona Supreme Court

of the appellate court's decision denying relief in the PCR proceeding. Alternatively, Respondents argue that Sub-claims 1 through 3 are without merit. Respondents also argue that Petitioner did not raise Sub-claims 4 and 5 before the state court and, thus, these sub-claims are procedurally defaulted.

> a.    Whether all of Petitioner's claims are procedurally defaulted for failure to present them to the Arizona Supreme Court

Citing *Baldwin*, 541 U.S. 27,  Respondents argue that Petitioner's claims raised in his PCR Petition and on appeal in that proceeding are defaulted because he failed to seek review by the Arizona Supreme Court. (Answer, p. 17).

In *Baldwin*, the U.S. Supreme Court reviewed a decision from the Ninth Circuit to address the question of what constituted notice of the federal nature of a claim sufficient to satisfy the fair presentment requirement found in 28 U.S.C. § 2254(b)(1).  In setting out the groundwork for its decision, the *Baldwin* Court stated that "[t]o provide the State with the necessary 'opportunity,' the prisoner must 'fairly present' his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim." *Baldwin,* 541 U.S. at 29 (citations omitted). Respondents rely on the  *Baldwin* Court's general statements of the law of exhaustion to support their assertion that *Swoopes*, at least insofar as it addresses whether habeas petitioners must seek review in the highest state court, is no longer valid.[16]  However, an examination of the rationale employed in the *Swoopes*  decision readily distinguishes that case from the general statements of law referred to by Respondents.

*Swoopes,* which examines the habeas exhaustion requirement specifically with regard to Arizona's discretionary review system, was decided on remand to the Ninth Circuit for consideration in light of the Supreme Court's decision in the *O'Sullivan* case.  *Swoopes,* 196 F.3d 1008.  In *Swoopes*, the Ninth Circuit, like the *Baldwin* Court, began its analysis by

---

[16]Under *Swoopes,* Petitioner  herein need only seek review from the Arizona Court of Appeals and not the Arizona Supreme Court.  *Swoopes,* 196 F.3d 1008.

reiterating the general rule stated in *O'Sullivan* that, "in order to satisfy the exhaustion requirement for federal habeas relief, state prisoners must file for discretionary review in a state supreme court when that review is part of ordinary appellate review." *Swoopes*, 196 F.3d at 1009 (*citing O'Sullivan,* 526 U.S. at 847). The *Swoopes* court recognized, however, that the Supreme Court in *O'Sullivan* had "acknowledged an exception to the exhaustion requirement..." by making it clear that "'the creation of a discretionary review system does not, *without more*, make review' in a state supreme court 'unavailable.'" *Swoopes*, 196 F.3d at 1009 (*quoting O'Sullivan*, 526 U.S. at 847) (emphasis added in *Swoopes*). The Ninth Circuit proceeded to consider Arizona's discretionary review system and found that Arizona case law made it clear that "in cases not carrying a life sentence or the death penalty, review need not be sought before the Arizona Supreme Court in order to exhaust state remedies." *Swoopes*, 196 F.3d. at 1010. Thus, the court concluded, "post-conviction review before the Arizona Supreme Court is a remedy that is 'unavailable' within the meaning of *O'Sullivan*." *Id.* (footnote omitted). There is nothing in *Baldwin* that suggests, implicitly or explicitly, that this analysis is flawed or that the *Swoopes* holding has been overruled.

Moreover, the Ninth Circuit continues to cite *Swoopes* for the very proposition Respondents suggest was overruled. *See Castillo*, 399 F.3d at 998 n.3 ("[i]n cases not carrying a life sentence or the death penalty, 'claims of Arizona state prisoners are exhausted for purposes of federal habeas once the Arizona Court of Appeals has ruled on them.'" (*quoting Swoopes,* 196 F.3d at 1010)). Therefore, Respondents do not prevail with their argument that Petitioner's claims of ineffective assistance of counsel raised in Ground IV are not exhausted because Petitioner did not to seek review before the Arizona Supreme Court.[17]

### b.      Ground IV Sub-claim 1

Petitioner argues that his trial counsel was ineffective for failing "to call to the stand Dr. Hinton to testify as to the [P]etitioners's P.T.S.D. (mental disorder)." (Petition, p. 9).

---

[17]These same reasons also foreclose any argument that Petitioner's Ground V claim is unexhausted for failure to seek review by the Arizona Supreme Court.

Respondents point out that although Petitioner argued in his PCR Petition that trial counsel was ineffective for failing to call Dr. Comer to testify about Petitioner's PTSD, Petitioner did not argue in his PCR Petition that trial counsel was also ineffective for failing to call Dr. Hinton to testify about that issue. (Answer, p. 18 n.6). In his Supplemental Reply, Petitioner asserts that the inmate who assisted him with drafting his federal habeas Petition mistakenly indicated "Dr. Hinton" when he should have written Dr. Comer's name instead. Petitioner also states that:

> it was Dr. Comer that Petitioner wanted to call. Dr. Comer is a neuropsychologist whose report concluded that petitioners [sic] symptoms were consistent with frontal lobe damage from blunt force trauma....Petitioner's trial counsel failed to list this crucial witness....Petitioner's trial counsel confused Dr. Hinton's and Dr. Comer's reports and wrongly listed Dr. Hinton to testify about the frontal lobe damage effects. But Dr. Hinton's testimony was unwanted because he would testify about Petitioner's PTSD and may elude [sic] to Petitioner's prior prison record. The frontal lobe damage and its effects on impaired judgment and loss of cognition, explaining why Petitioner was lying on the ground and had wandered from the accident site, is what defense counsel meant to bring to the jury's attention, not PTSD. Defense counsel confused the two doctors' reports. Dr. Comer made no conclusions about PTSD but Dr. Hinton had, and for that reason the Judge ruled that... Dr. Hinton's testimony would open the door to the PTSD and the prison record. Trial counsel, and appeal counsel confused this necessary testimony with Dr. Hinton's....Petitioner continues to contend defense counsel erred in listing Dr. Hinton, accidentally, instead of Dr. Comer to testify about the frontal lobe damage....Because trial counsel confused the two doctors' reports, the court ruled that the PTSD could be brought up eluding [sic] to the prior prison record. However, had Dr. Comer been properly listed, this issue of PTSD would have never been brought up by the court, the witness, or the lawyers.

(Supplemental Reply, pp. 4-5).

On the instant record, Petitioner has abandoned any claim that trial counsel was ineffective for failing to call Dr. Hinton to testify concerning Petitioner's alleged PTSD. Further, Petitioner makes clear that his argument is that Dr. Comer should have been called to testify about frontal lobe issues, not PTSD. Petitioner raises his claim concerning Dr. Comer in Ground IV Sub-claim 5. Because Petitioner has abandoned his claim concerning counsel's failure to call Dr. Hinton to testify, Petitioner's Ground IV Sub-claim 1 should be dismissed as withdrawn.

c.      Ground IV Sub-claim 2

Petitioner argues that his trial counsel was ineffective for failing to object to the admission of Petitioner's BAC level on the basis that there was no foundation regarding "the time of the blood draw or to allow the blood draw or BAC into evidence." (Petition, p. 9). In his PCR proceeding, Petitioner argued that trial counsel was ineffective for failing to object to the admission of Petitioner's BAC level when there was no foundation laid for the time of the blood draw.[18]  Respondents address the claim on the merits.  (*See* Answer, pp. 25-27).

(1.)     State court proceeding

At trial, the prosecutor presented testimony from Tucson Police Department Officer Dennis Widener.  (*See* Answer, Exh. C).  Officer Widener testified that on the date of Petitioner's arrest, he was assigned to the "DUI squad" and he had been trained to collect physical evidence in DUI investigations, including obtaining and handling blood and urine samples.  (Answer, Exh. C, pp. 28-32).  Officer Widener testified that  he responded to the accident scene at 2:49 a.m., approximately one hour after the collision occurred.  (*Id.* at pp. 32-33).  He saw that Petitioner was strapped to a stretcher board.  (*Id.* at pp. 33-36). Petitioner was then transported to Tucson Medical Center and Officer Widener followed. (*Id.* at p.36).  At the hospital, hospital staff took blood and urine samples from Petitioner and gave a sample of blood to Officer Widener.  (*Id.* at p.40).  Officer Widener further testified that after he completed a "substance report" and a "property sheet" with regard to the blood sample, he assigned the sample an evidence number and gave the sample to Officer Barrett to transport to the evidence refrigerator at the police station.  (*Id.* at pp. 41-42).  Referring to the substance report to refresh his recollection, Officer Widener testified that the blood was drawn at 3:33 a.m.  (*Id.* at p. 41).

The prosecutor also called Jaime Anderson, the criminalist at the Tucson Police

---

[18]On direct appeal, Petitioner argued that the trial court erred in admitting the evidence of his BAC.  The appellate court rejected this claim.  (Answer, Exh. I, pp. 11-12).

Department's crime lab who tested Petitioner's blood. (Answer, Exh. S, pp. 70, 72). When the prosecutor asked Ms. Anderson about Petitioner's blood results, defense counsel objected as to foundation and the court directed the prosecutor to lay more foundation. (*Id.* at p.72). The prosecutor then asked Ms. Anderson from where she had obtained the blood sample, and after she answered, defense counsel once again objected arguing that: "The sample is evidence that needs to be put into evidence." (*Id.* at pp. 72-73). At the ensuing bench conference, defense counsel argued that to lay the proper foundation, the State was required to produce the actual blood sample in court. (*Id.* at pp. 73-74). Defense counsel further argued that the prosecutor had not properly established the chain of custody. (*Id.*) The trial court disagreed that the State was required to produce the actual blood sample in court; however, the court agreed with defense counsel that the State needed to establish the chain of custody and the prosecutor had not yet accomplished that. (*Id.*).

When testimony resumed, the prosecutor asked Ms. Anderson to identify the property sheet that Officer Widener had originally completed. (*Id.* at pp. 75-76). After Ms. Anderson identified the document, the prosecutor asked her whether the document was one that was kept by the police department as part of its regular course of business in recording the chain of custody of evidence, and Ms. Anderson indicated it was. (*Id.; see also Id.* at p.79 (Ms. Anderson testifying that the "Property Control Sheet" is maintained and relied upon by the police department to show the chain of custody of evidence)). The prosecutor then asked Ms. Anderson whether the document reflected that the sample was accounted for from the time of the blood draw until the time she tested it. (*Id.*). As Ms. Anderson began to describe the chain of custody reflected on the form, defense counsel objected on the basis of foundation. (*Id.* at p. 76). The court overruled the objection, finding that the property sheet was a business record and, thus, its contents were admissible. (*Id.*). After testimony resumed and Ms. Anderson once again began explaining the document's memorialized chain of custody, defense counsel again objected and argued that the property sheet was not sufficient because each person who handled the blood sample must testify to lay the proper foundation. (*Id.* at pp. 77). The trial court again overruled the objection. (*Id.* at pp. 77-78).

Later, during cross-examination of Ms. Anderson, defense counsel asked Ms. Anderson what time the blood draw occurred, and she testified: "3:33 a.m." (*Id.* at p. 82).

Petitioner argued in his PCR Petition, that counsel had been ineffective for failing to object to Officer's Widener's use of the substance report to refresh his recollection of the time of the blood draw because the report had not been admitted into evidence. (Answer, Exh. L, p.7). In denying Petitioner's PCR Petition on this issue, the trial court stated:

> at trial, the officer referred to normal police records in order to refresh his recollection as to the time he drew Petitioner's blood. This Court has reviewed the record, and fails to comprehend what foundation is missing. In any event, the admissibility of evidence is discretionary by the trial court. *State v. Kiper,* 181 Ariz. 62, 887 P.2d 592 (App. 1994). Thus, given the routine nature of such police records, this Court fails to see how counsel's conduct fell below prevailing professional norms. *Strickland*....Indeed, Petitioner fails even to allege that such conduct falls below prevailing professional norms or in some way causes him prejudice. Petitioner has failed to make a colorable claim to [sic] ineffective assistance of counsel on this ground.

(Answer, Exh. M, p.4). Petitioner raised the issue in his petition for review of the trial court's ruling. (Doc. 28, Exh. 1, pp. 9-10). The appellate court granted review but denied relief by adopting the trial court's ruling as follows:

> Because the court's order denying relief clearly identified the issues and correctly ruled on them so that any court in the future can understand it, and because the court's findings and conclusions are supported by the record before us, we adopt the trial court's ruling. *See State v. Whipple,* 177 Ariz. 272, 274, 866 P.2d 1358, 1360 (App. 1993)

Answer, Exh. N). Because the appellate court adopted the trial court's ruling, the trial court's order denying Petitioner's PCR Petition, is the last-reasoned state court decision on this issue. *See Ylst,* 501 U.S. at 804; *Whipple,* 177 Ariz. at 274, 866 P.2d at 1360 ("Under *Ylst* and *Coleman* the federal courts will 'presume that no procedural default has been invoked' when an unexplained order leaves in place an earlier decision on the merits. *Ylst*, 501 U.S. at __, 111 S.Ct. at 2594. We presume that the federal courts will do as the United States Supreme Court directs and 'look through' to the superior court ruling to determine whether the issues raised in the federal habeas corpus proceeding were resolved in Arizona courts on the merits or are precluded by procedural default.").

1

(2.)   Analysis

2

While testifying, Officer Widener refreshed his recollection regarding the time of the

3

blood draw by referring to reports that he generated at the time of the blood draw.  In his

4

PCR Petition, Petitioner argued that trial counsel was ineffective for failing to objet to

5

Officer Widener's reference to the report.

6

The state court, in applying *Strickland,* applied the correct law to the issue.   In

7

applying *Strickland,* the trial court could not "comprehend what foundation is missing"; how

8

counsel's conduct fell below prevailing professional norms given the routine nature of police

9

records such as the substance report referred to by Officer Widener; or how Petitioner was

10

prejudiced by counsel's failure to object.   (Answer, Exh. M, p.4).

11

Arizona law is clear that:

12

a witness may be shown a writing or other evidence...to refresh the witness's recollection.  *See* Ariz.R.Evid. 612; Morris K. Udall, et. al., *Law of Evidence*

13

§ 34 (3d ed. 1991) ("[I]t is permissible to show the witness his prior statement or any other document or object to see if looking at it will revive memory ....

14

[t]he refreshing object is not itself admissible.")....If the witness's recollection is refreshed, she can testify. If her recollection is not refreshed, only then can

15

the record be "read [or played] into evidence but cannot be received as an exhibit unless offered by the adverse party." Ariz. R. Evid. 803(5).

16

*State v. Salazar*, 216 Ariz. 316, 318 n.2, 166 P.3d 107, 109 n.2 (App. 2007).  Given that

17

Arizona law permits a witness to refresh his or her recollection by referencing a "writing",

18

such as the substance report at issue here,  the trial court reasonably determined that there

19

was no basis for defense counsel to object.  Further, because Arizona permits a witness to

20

refresh recollection by reference to a writing, and in light of the trial court's recognition of

21

the routine nature of police records such as the substance report, the trial court reasonably

22

pointed out that Petitioner failed to allege prejudice resulting from counsel's failure to object.

23

On the instant record, there is no showing by Petitioner that there was a reasonable

24

probability that, but for counsel's failure to object, the outcome of Petitioner's trial would

25

have been different.  (Answer, Exh. M, p. 4). Petitioner has failed to demonstrate that, under

26

prevailing professional norms, counsel should have objected to Officer Widener's testimony

27

on this issue or that such objection, if made, would have been meritorious. Consequently, the

28

state court's ruling on this issue was not contrary to, or an unreasonable application of, clearly established federal law as determined by the United States Supreme Court. Nor did the state court's proceeding result in a decision that was based on an unreasonable determination of the evidence presented.

To the extent that Petitioner argues that trial counsel rendered ineffective assistance by "allow[ing] the blood draw or BAC into evidence" (Petition, p.9), this claim was not raised as part of his PCR Petition and is, therefore, procedurally defaulted. Furthermore, the record clearly reflects that trial counsel repeatedly objected when the prosecutor attempted to elicit testimony from Ms. Anderson about Petitioner's BAC results and the trial court admitted the testimony over counsel's objections. Petitioner's claim is without support in the record and, thus, lacks merit.

### d.    Ground IV: Sub-claim 3

Petitioner argues that his trial counsel was ineffective for failing to advise him of a plea offer made by the State prior to a July 25, 2003 hearing. (Petition, p. 9). Petitioner raised this issue in his PCR Petition and in his petition for review of the trial court's denial of his PCR Petition. (*See* Answer, Exh. L, pp.4-5; Answer, Exh. M, p. 4; Doc. 28, Exh. 1, pp. 10-11). Respondents address Petitioner's claim on the merits.

### (1.)    State court proceeding

On July 25, 2003, Petitioner's matter came on for hearing on various pre-trial motions. (Answer, Exh. U.) At that time, the following exchange took place in Defendant's presence, in pertinent part:

> [The Prosecutor]:    Also, the State has at least verbally or by letter made an improved plea offer in the case, which Mr. Storts [*i.e.*, defense counsel] has indicated his client rejects, but I do think we should make at least some sort of *Donald* record to acknowledge that he knows about it. It is basically, the same plea as before, which was a plea to manslaughter, dangerous nature, and aggravated assault and DUI. All counts to run concurrent, but there's a cap of–Brick [defense counsel], help me, either 15 or 16 years. Let's say 15 years for purposes of making this record. I don't believe it makes a difference. My understanding is Mr. Coppess isn't interested in the plea. If I'm wrong about that, we can get that written up and

- 40 -

1                                            brought back to the court later today.

       [The Court]:           All right.

2

     ***

3

     [Defense Counsel]:    ...So what I did, I prepared a piece of status paper for the

4                                      court and counsel and Mr. Coppess, which indicates his

                                     maximum exposure is nine eight–90.75 years.  The first

5                                      22 would be flat time, the next 68.75 would be at 85

                                     percent.

6                                       I also supplied to Mr. Coppess the letter that was sent

7                                      by...[the prosecutor] on July the 3rd.  He had that letter to

                                     review and it extended the new plea offer to him, 15-year

8                                      cap on a manslaughter plea.  I presented that to him in

                                     the presence of Tom McLaughlin, one of our

9                                      investigators, also retired Tucson Police Department

                                     detective.  Mr. Coppess indicated he did not want to take

10                                     the plea with the 15-year cap, he wanted to go to trial.

                                    That's what's been explained to him. And I certainly

11                                     have no objection if the Court wishes to ask him a

                                    question as to whether or not that's what his

12                                     understanding of it was and, as such, if he is rejecting

                                    that plea and wishes to start trial on Monday.

     [The Court:]    *You heard the question, Mr. Coppess?*

13      [Petitioner]:    *That's correct.  He explained it to me.*

     [The Court:]    *You want to go to trial on Monday?*

14      [Petitioner:]    *Yes, Your Honor.*

15 (Answer, Exh. T, pp. 18-20 (emphasis added); *see also* Answer Exh. T (defense counsel's

16 sentencing calculation)).

17       Petitioner argued in his PCR Petition that trial counsel "had not explained the new

18 plea to him and that he would have taken it, had it been offered to him.  Additionally,...

19 [Petitioner] asserts that Mr. Storts did not mention the new plea to him because Mr. Storts

20 was anxious to see how he and Mr. Peasley would work together at trial."  (Answer, Exh. L,

21 p. 8).  The trial court rejected Petitioner's claim as follows:

22         ...Review of the transcript [of the July 25, 2003 hearing] demonstrates

that Petitioner was amply aware of the plea offer.  Counsel informed the Court

23 in Petitioner's presence that he had prepared a status paper for the Court,

counsel, and Petitioner stating the maximum exposure Petitioner faced (90.75

24 years), and further supplied Petitioner with the July 3, 2003 plea offer

extended by the State, which carried a 15-year cap on a manslaughter plea.  On

25 the record, and in Counsel's own presence, Petitioner stated that Counsel had

explained the sentencing possibilities and the plea agreement to him, and that

26 he wished to go to trial.  Reporter's Transcript, 7/25/03, pp 18-20.

        In view of that record, it is clear that Petitioner's claim of ineffective

27 assistance of counsel on this ground is without merit.  Petitioner has failed to

show how Counsel's actions fell below professional norms, let alone how...

28 such allegedly deficient performance prejudiced him.

1   (Answer, Exh. M, pp. 4-5).

2          Petitioner raised the issue in his petition for review, and the appellate court adopted

3   the trial court's ruling.   (*See* Doc. 28, Exh. 1, pp. 9-10; Answer, Exh. N).   The trial court's

4   ruling is the last-reasoned state court decision on this issue.

5                                    (2.)   Analysis

6          Failure on the part of defense counsel to convey a plea offer to his or her client can

7   constitute ineffective assistance of counsel.  *See United States v. Blaylock,* 20 F.3d. 1458 (9th

8   Cir. 1994).  The petitioner must also demonstrate a reasonable probability that if he had been

9   advised of the plea offer, he would have accepted it.  *Jones v. Woods,* 114 F.3d 1002, 1010

10  (9th Cir. 1997) (*citing Blaylock,* 20 F.3d at 1466-67).  The record before the trial court

11  reflected that in the presence of Petitioner and the court: (1) the prosecutor provided an oral

12  summary of the terms of the plea offer; and (2) defense counsel stated that he had informed

13  Petitioner in writing of both the plea offer and potential sentences should Petitioner be

14  convicted at trial.  Moreover, Petitioner assured the court in no uncertain terms that defense

15  counsel had explained the plea to him and that he desired to proceed to trial. The record

16  unequivocally contradicts Petitioner's claim.   The state court's ruling on this issue was not

17  contrary to, or an unreasonable application of, clearly established federal law as determined

18  by the United States Supreme Court.  Nor did the state court's proceeding result in a decision

19  that was based on an unreasonable determination of the evidence presented.

20                            e.      Ground IV: Sub-claim 4

21         Petitioner argues that trial counsel was ineffective for failing to "find or call wittnises

22  [sic] who made statements to the police that the [P]etitioner was not driving the car, thereby

23  proveing [sic] his innocence."   (Petition, p. 9).   Respondents argue that this claim is

24  procedurally defaulted because Petitioner did not raise it during the state proceedings.

25  (Answer, pp. 17-18).

26         To fairly present a claim for purposes of exhaustion, the petitioner must describe the

27  operative facts and federal legal theory on which his claim is based so that the state courts

28  have a fair opportunity to apply controlling legal principles to the facts bearing upon his

constitutional claims. *Anderson v. Harless,* 459 U.S. 4, 6 (1982); *see also Rose v. Palmateer,* 395 F.3d 1108, 1111 (9th Cir. 2005) ("In addition to requiring specificity in pleading the federal nature of a claim, we also require a petitioner to articulate the substance of an alleged violation with some particularity.")   "Petitioner's assertion of a claim of ineffective assistance of counsel based on one set of facts [presented to the state courts], does not exhaust other claims of ineffective assistance of counsel based on different facts" that were not presented to the state courts. *Date,* 619 F.Supp.2d at 788. *See also Moormann v. Schriro,* 426 F.3d 1044, 1056-57 (9th Cir. 2005), *cert. denied,* 548 U.S. 927 (2006) (new allegations of ineffective assistance of counsel not previously raised before the state court cannot be addressed on habeas review).  Although Petitioner argued during the PCR proceeding that trial counsel was ineffective on other grounds, he never argued that counsel was ineffective for failing to find or call witnesses to testify that Petitioner was not the driving the car on the night of the accident.  (*See* Answer, Exh. L; Doc. 28, Exh. 1).  Petitioner's failure to present the issue to the state court renders the claim unexhausted. *See Moormann,* 426 F.3d at 1056-57; *Date,* 619 F.Supp.2d at 788.  Because Petitioner cannot now return to state court to present this issue in a second post-conviction relief petition, *see supra,* III.B.3. at pp. 30-31, Respondents are correct that the claim is procedurally defaulted.  Moreover, Petitioner has failed to established cause and prejudice to excuse his procedural default.  Nor has he demonstrated a fundamental miscarriage of justice.  Consequently, Petitioner's claim should be dismissed as procedurally defaulted.

### f.      Ground IV: Sub-claim 5

Petitioner argues that trial counsel was ineffective for failing to "call a [sic] expert wittness [sic] as to mental competency and mitigating factor's [sic]. Dr. Comer examined the [P]etitioner for 8 hours and had a diagnose's [sic] of frontal lobe brain injury. The trial attorney's failure to call this expert witness was prejudicial to [P]etitioner." (Petition, p. 9). Respondents argue that the portion of the claim relating to frontal lobe brain injury is procedurally defaulted because Petitioner never raised the claim in state court. (Answer, pp. 18, 29).  Respondents address the remainder of the claim on the merits.  (*Id.* at pp. 29-30).

(1.)    Whether the Sub-claim with regard to the issue of frontal lobe brain injury is procedurally defaulted

Petitioner is required to describe the operative facts and legal theory upon which his claim is based.  *See Anderson,* 459 U.S. at 6; *Rose,* 395 F.3d at 111; *Tamalini,* 249 F.3d at 898.  Petitioner raised in his PCR proceeding only the issue whether trial counsel was ineffective for failure to call Dr. Comer to testify about Petitioner's PTSD.  (*See* Answer, Exh. L, pp. 6-7; Doc. 28, Exh. 1, pp. 7-9).  Because Petitioner never argued to the state court that trial counsel was ineffective for failing to call Dr. Comer to testify that Plaintiff suffered from an alleged frontal lobe brain injury, the claim is not exhausted.  Moreover, Petitioner cannot now return to state court to raise the issue in a second post-conviction relief proceeding.  *See supra,* III.B.3. at pp. 30-31.

Petitioner argues that "appeal counsel..." in addition to trial counsel confused Dr. Hinton and Dr. Comer.  (Petitioner's Supplemental Reply, p. 4).  To any extent that this argument can be construed as Petitioner's attempt to establish cause in the form of ineffective assistance of appellate or post-conviction relief counsel to excuse his procedural default, such attempt is futile.  To rely on ineffective assistance of counsel to excuse a procedural default, the claim of ineffective assistance of counsel must itself have been fairly presented to the state court.  *See Edwards,* 529 U.S. at 451-54 (An allegation of ineffective assistance of counsel as cause for procedural default "is *itself* an independent constitutional claim" and is subject to the same exhaustion requirement as other habeas claims) (emphasis added)).  Thus, "an ineffective-assistance-of-counsel claim asserted as cause for the procedural default of another claim can itself be procedurally defaulted..." where, for example, the petitioner failed to fairly present the claim to the state court.  *Id.* at 453.  Although Petitioner herein did raise claims of ineffective assistance of trial counsel in his PCR Petition, he never presented the state court with a claim that appellate counsel was ineffective for confusing Dr. Hinton and Dr. Comer and that such confusion resulted in failing to raise a claim concerning Dr. Comer's testimony about Petitioner's alleged frontal lobe brain injury.  As discussed *supra* with regard to Sub-claim 4, "Petitioner's assertion of a claim of ineffective assistance

of counsel based on one set of facts [presented to the state courts], does not exhaust other claims of ineffective assistance of counsel based on different facts" that were not presented to the state courts. *Date,* 619 F.Supp.2d at 788. *See also Moormann,* 426 F.3d at 1056-57. Moreover, any second post-conviction relief proceeding to exhaust a claim of ineffective assistance of appellate counsel would be time barred and, thus, procedurally defaulted. *See supra,* III.B.3. at pp.30-31 (*citing* Ariz.R.Crim.P. 32.4). Because Petitioner procedurally defaulted any claim that appellate counsel was ineffective for allegedly confusing Dr. Hinton and Dr. Comer, he cannot rely on that claim to excuse procedural default of Sub-claim 5. *See Edwards,* 529 U.S. at 451-53 ("an ineffective-assistance-of-counsel claim asserted as cause for the procedural default of another claim can itself be procedurally defaulted..." and is subject to the  cause-and prejudice standard.).    Additionally, because there is no Sixth Amendment right to effective assistance of post-conviction relief counsel, *Moormann*, 426 F.3d at 1058,  Petitioner cannot rely on an argument of ineffective assistance of post-conviction relief counsel to excuse his procedural default.  Petitioner has failed to establish cause and prejudice sufficient to set aside procedural default for his failure to present that portion of Sub-claim 5 alleging ineffective assistance of trial counsel for failure to call Dr. Comer to testify about Petitioner's alleged frontal lobe brain injury.  Nor has Petitioner established a fundamental miscarriage of justice with regard to this portion of Sub-claim 5. This portion of Sub-claim 5 is procedurally defaulted.

(2.)    Merits of the remainder of Sub-claim 5

(a.)    State court proceeding

Petitioner argued in his post-conviction relief proceeding that trial counsel was ineffective for failing to call Dr. Comer to testify about Petitioner's PTSD. (Answer, Exh. L, pp. 6-7). The trial court denied Petitioner's claim as follows in pertinent part:

> Petitioner may have sustained his PTSD as a result of situations he found himself in while being incarcerated in jail or prison. The Court had ruled that if defense counsel opened the issue of PTSD, the State was free to cross-examine on the origins of the PTSD, allowing the jury to hear about Petitioner's prior 10-year incarceration in the Department of Corrections. Petitioner argues that had the jury heard that he fled the scene of the accident because of PTSD, it would not have convicted him as it could have inferred

that the behavior stemmed from an underlying mental health issue.

        Petitioner has not overcome the strong presumption that counsel's decision not to call Dr. Comer was strategic....Petitioner does not suggest how counsel could have avoided the topic of prison in examining Dr. Comer while still having the expert reveal that Petitioner originally suffered from PTSD there. Petitioner has failed to meet the first prong of the *Strickland* test. Petitioner has further failed to show any prejudice as a result of counsel's performance. While the jury did not hear any evidence as to Petitioner's post-traumatic stress disorder, it also did not hear evidence as to Petitioner's incarceration. Petitioner has not demonstrated any prejudice, and has not met the second prong of the *Strickland* test.

(Answer, Exh. M, p. 3).

Petitioner raised the issue in his petition for review, and the appellate court adopted the trial court's ruling. (Doc. 28, Exh.1, pp. 7-9; Answer, Exh. N). The trial court's ruling is the last-reasoned state court decision on this issue.

(b.)   Analysis

In a 2002 report, Dr. Comer wrote that Petitioner's "psychiatric history also includes outpatient counseling at Compass Health Care (about 12 sessions between 2001 and 2002 by his report, no record available) for drug addiction and *PTSD (related to abuse as a child, daughter's death, prison experiences).*" (Petitioner's Supplemental Reply, Exh. A, p.2) (emphasis added). Dr. Comer was not listed on Petitioner's witness list for trial. (Petitioner's Supplemental Reply, Exh. B; *see also* Answer, Exh. L, p. 6). The record also reflects that the defense intended to call Dr. Hinton to testify about Petitioner's PTSD. (Petitioner's Supplemental Reply, Exh. B; Answer, Exh. I, p.4; Petition Exh. L, p.6). The trial court ruled that if Dr. Hinton testified about Petitioner's PTSD, the State could question Dr. Hinton about the prison setting of Petitioner's experiences with regard to the issue of PTSD. (*See* Answer, Exh. I, pp. 4-5). The defense did not call Dr. Hinton to testify at trial. (*Id.* at p.5).

Dr. Comer's report reflects that he, like Dr. Hinton, believed Petitioner's PTSD to be related to Petitioner's prison experiences and, thus, Dr. Comer would also have been subject to cross-examination on the issue of Petitioner's prior 10-year incarceration in prison. Thus, as the trial court pointed out, had Dr. Comer been called to testify about Petitioner's PTSD, the topic of prison could not have been avoided given that Petitioner originally suffered from

PTSD there. (*See* Answer, Exh. M, p.3; *see also* Petitioner's Supplemental Reply, Exh. A, p. 2). For this reason, any decision not to call Dr. Comer to testify about PTSD at trial could arguably be viewed as strategic to prevent the jury from learning about Petitioner's prior criminal record and prejudice resulting therefrom. However, it is problematic to conclude that the decision not to list Dr. Comer as a witness was strategic based on the instant record which reflects that Dr. Comer was omitted from the witness list on Thursday, July 24, 2003, prior to commencement of Petitioner's trial on July 28, 2003.[19] The record reflects that the trial court rendered its decision concerning Dr. Hinton's testimony during the trial. (*See* Answer, Exh. I, p. 4 ("Before Hinton took the stand, the prosecutor noted that Hinton had based his diagnosis, at least in part, on Coppess's prior 'bad experiences in prison' and argued that the state should be permitted to question Hinton about all of those experiences" and the trial court questioned Dr. Hinton "outside the jury's presence..." on this issue)). On the instant record, it is not entirely clear that trial counsel made a strategic decision *prior* to trial to omit Dr. Comer from the witness list based on the trial court's later ruling during trial that expert testimony about Petitioner's PTSD would open the door to Petitioner's prior 10-year incarceration. The record is clear that trial counsel made the strategic decision not to call Dr. *Hinton* based on that ruling and it follows that counsel would not have called Dr. Comer, had he been listed as a witness, for the same reason. Given the potentially prejudicial impact that testimony about Petitioner's prior incarceration would have had, trial counsel's decision not to call an expert to testify about Petitioner's PTSD was a reasonable strategic decision.

Regardless of the reason why trial counsel decided not to list Dr. Comer as a witness on the issue of PTSD, it is clear that Dr. Comer's testimony about PTSD, like Dr. Hinton's testimony, would have opened the door to Petitioner's prior incarceration. The record reflects

---

[19]The Court takes judicial notice that July 24, 2003 was a Thursday. The transcript of a July 25, 2003 hearing on pre-trial motions reflects that trial was to begin the following Monday, which would have been July 28, 2003. (Answer, Exh. U, p.20). In light of the dates of the transcripts of record, the Court presumes that the trial commenced on July 28, 2003 as scheduled.

that the defense intended to present evidence about Petitioner's PTSD through Dr. Hinton to show that Petitioner fled from the accident scene not because of consciousness of guilt as the State argued, but because the accident caused "an acute psychological reaction due to his [PTSD]...symptoms." (Answer, Exh. P, pp. 12-13; *see also* Answer, Exh. I, p.4). Petitioner argued in his PCR Petition that Dr. Comer's testimony about Petitioner's PTSD would have shown that he did not leave the scene because of any sense of wrong-doing or evasion of responsibility, but because of his PTSD. (Answer Exh. L, pp. 6-7). In his report, Dr. Comer did not discuss Petitioner's post-accident behavior. (*See* Petitioner's Supplemental Reply, Exh. A). Nor did he discuss Petitioner's PTSD in any great detail. (*Id.*). Nonetheless, because Dr. Comer noted that Petitioner's PTSD was related, in part, to "prison experiences", Dr. Comer's testimony would have opened the door to the prejudicial information that Petitioner had served time in prison. (*Id.* at p.2). Thus, as the trial court pointed out: "While the jury did not hear any evidence as to Petitioner's post-traumatic stress disorder, it also did not hear evidence as to Petitioner's incarceration." (Answer, Exh. M, p. 3). The United States Supreme Court recently observed that:

> In assessing prejudice under *Strickland*, the question is not whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel acted differently. *See Wong v. Belmontes*, 558 U.S. ----, ---- (2009) (per curiam) (slip op., at 13); *Strickland*, 466 U.S., at 693. Instead, *Strickland* asks whether it is "reasonably likely" the result would have been different. *Id.*, at 696. This does not require a showing that counsel's actions "more likely than not altered the outcome," but the difference between *Strickland*'s prejudice standard and a more-probable-than-not standard is slight and matters "only in the rarest case." *Id.*, at 693, 697. *The likelihood of a different result must be substantial, not just conceivable. Id.*, at 693.

*Harrington v. Richter,* __ U.S. __, 131 S.Ct. at 791-92 (2011) (emphasis added). Failure to establish prejudice renders an ineffective assistance of counsel claim meritless. *See Strickland,* 466 U.S. at 697-700. On the instant record, it is not entirely clear that Dr. Comer would have testified that Petitioner's post-accident actions were attributable to PTSD. Had Dr. Comer testified, it is not reasonably likely that the outcome of Petitioner's trial would have been different. The jury would have heard Dr. Comer's opinions concerning Petitioner's PTSD, what little Dr. Comer apparently had to say on the subject, and the jury

would also have learned about Petitioner's prior 10-year incarceration: the very harm Petitioner sought to avoid after the trial court's ruling regarding Dr. Hinton's testimony. (Answer, Exh. I, p.5; Petition, p.8).  Therefore, the state court's decision that Petitioner failed to establish prejudice under *Strickland* was not contrary to, or an unreasonable application of clearly established federal law as determined by the United States Supreme Court.  Nor did the state court's proceeding result in a decision that was based on an unreasonable determination of the evidence presented.

g.      Recommendation: Ground IV

The Magistrate Judge recommends that the District Court: (1) dismiss as withdrawn Ground IV Sub-claim 1 regarding ineffective assistance of counsel concerning failure to call Dr. Hinton to testify; (2) deny on the merits Ground IV Sub-claim 2 regarding ineffective assistance of counsel concerning the admissibility of the timing and results of Petitioner's BAC; (3) deny on the merits Ground IV Sub-claim 3 regarding ineffective assistance of counsel for failure to convey plea offer; (4) dismiss as procedurally defaulted Ground IV Sub-claim 4 regarding ineffective assistance of counsel for failure to find or call witnesses to testify that Petitioner was not the driver; (5) dismiss as procedurally defaulted that portion of Ground IV Sub-claim 5 regarding ineffective assistance of counsel for failure to call Dr. Comer to testify about Petitioner's alleged frontal lobe brain injury; and (6) deny on the merits that portion of Ground IV Sub-claim 5 regarding ineffective assistance of counsel for failure to call Dr. Comer to testify about Petitioner's PTSD.

5.      Ground V

Petitioner claims the trial court violated his right under the Sixth Amendment to a fair and impartial jury.  (Petition, p. 10).  During trial, the court dismissed jurors Walton and Raybould after, *inter alia,* learning that juror Walton had discussed her opinion about the case with juror Raybould.  Petitioner contends that the trial court violated his constitutional right to a fair and impartial jury when the court failed to "question or investigate the action's [sic] of the juror's [sic]."  (*Id.*).  Respondents argue that the claim is procedurally defaulted in light of the trial court's finding that the claim was precluded under state law.  (*See* Answer,

pp. 17, 31).

Petitioner raised this issue in his PCR Petition. (*See* Answer, Exh. L, pp. 7-8).  The trial court initially found that the claim was precluded from review under Rule 32.2(a)(3) of the Arizona Rules of Criminal Procedure for failure to raise the claim on appeal.  (Answer, Exh. M, p. 5).  The trial court then concluded, in the alternative, that the claim was without merit.  (*Id.* at pp. 5-11).  Petitioner raised the issue in his petition for review and the appellate court adopted the trial court's ruling. (Doc. 28, Exh. 1, pp. 12-15; Answer, Exh. N).

"The independent and adequate state ground doctrine prohibits the federal courts from addressing the habeas corpus claims of state prisoners when a state-law default prevented the state court from reaching the merits of the federal claims." *Thomas v. Lewis,* 945 F.2d 1119, 1123 (9th Cir. 1991).  "Preclusion of issues for failure to present them at an earlier proceeding under Arizona Rule of Criminal Procedure 32.2(a)(3) 'are independent of federal law because they do not depend upon a federal constitutional ruling on the merits.'" *Cook,* 538 F.3d at 1025 (*quoting Stewart v. Smith,* 536 U.S. 856, 860 (2002)) (footnote omitted).  Moreover, the Ninth Circuit has repeatedly determined that Arizona regularly and consistently applies its procedural default rules such that they are an adequate bar to federal review of a claim. *See Ortiz*, 149 F.3d at 932 (finding Rule 32.2(a)(3) regularly followed and adequate); *Poland (Michael) v. Stewart*, 117 F.3d 1094, 1106 (9th Cir. 1997) (same); *Martinez-Villareal v. Lewis,* 80 F.3d 1301, 1306 (9th Cir. 1996) (previous version of Arizona's preclusion rules "adequate"); *Carriger v. Lewis*, 971 F.2d 329, 333 (9th Cir. 1992) (same).  Consequently, the trial court's conclusion that Petitioner's claim was waived pursuant to Ariz.R.Crim.P. 32.2(a)(3) constitutes an independent and adequate state-law bar to federal habeas review.  Further, the state court's alternative finding that Petitioner failed to state a colorable claim for relief on the issue does not vitiate this procedural bar to federal habeas review.  *See Harris,* 489 U.S. at 264 n.10 ("[A] state court need not fear reaching the merits of a federal claim in an *alternative* holding. By its very definition, the adequate and independent state ground doctrine requires the federal court to honor a state holding that is a sufficient basis for the state court's judgment, even when the state court also relies on federal

law.")(emphasis in original); *Comer,* 480 F.3d at 964 & n.6 ("A state court, however, does not vitiate a procedural bar ruling by addressing the merits of a claim in the alternative."); *Carriger,* 971 F.2d at 333 (same).

To excuse his procedural default, Petitioner argues that appellate and post-conviction relief counsel were ineffective. Petitioner must have exhausted his claim of ineffective assistance of appellate counsel in order to rely on such a claim to excuse  his procedural default. *See Edwards,* 529 U.S. 451; *see also supra* at III.B.4.f.(1.) (discussing ineffective assistance of counsel as cause for a procedurally defaulted claim). Petitioner never presented the state court with such an argument and, thus, the claim is procedurally defaulted. Moreover, because there is no Sixth Amendment right to effective assistance of post-conviction relief counsel, *Moormann*, 426 F.3d at 1058, Petitioner cannot rely on an argument of ineffective assistance of post-conviction relief counsel to excuse his procedural default. Petitioner has failed to establish cause and prejudice to set aside the independent and adequate state law bar precluding consideration of Ground V.  Nor has he established a fundamental miscarriage of justice.  Consequently, Ground V is barred from federal habeas review.

### a.    Recommendation: Ground V

The Magistrate Judge recommends that the District Court dismiss Ground V as procedurally defaulted.

## IV.    CONCLUSION

Respondents are mistaken that the Petition is untimely.  However, Respondents prevail in their argument that the Petition should be dismissed and denied.

## V.    RECOMMENDATION

For the foregoing reasons, the Magistrate recommends that the District Court dismiss in part and deny in part Petitioner's Petition for Writ of Habeas Corpus.  (Doc. No. 1) as follows:

1.   The Petition should be dismissed, in part, as procedurally defaulted with regard to:

    a.   Ground III;

    b.   Ground IV Sub-claim 4, and that portion of Sub-claim 5 regarding ineffective assistance of counsel for failure to call Dr. Comer to testify about Petitioner's alleged frontal lobe brain injury; and

    c.   Ground V.

2.   The Petition should be dismissed, in part, with regard to Ground IV Sub-claim 1, as that claim should be deemed withdrawn.

3.   The Petition should be denied on the merits with regard to:

    a.   Ground I;

    b.   Ground II; and

    c.   Ground IV Sub-claims 2 and 3, and that portion of Sub-claim 5 relating to ineffective assistance of counsel for failure to call Dr. Comer to testify about Petitioner's PTSD.

Pursuant to 28 U.S.C. §636(b), any party may serve and file written objections within fourteen (14) days after being served with a copy of this Report and Recommendation. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Fed.R.Civ.P. 72(b); *see also* LRCiv 7.2(e)(3) (10-page limit for objections). If objections are filed, the parties should use the following case number: **CV 09-176-TUC-CKJ.** Failure to file timely objections to any factual or legal determination of the Magistrate Judge may be deemed a waiver of the party's right to *de novo* review of the issues. *See United States v. Reyna-Tapia,* 328 F.3d 1114, 1121 (9th Cir.) (*en banc*)., *cert. denied,* 540 U.S. 900 (2003).

DATED this 2nd day of February, 2011.

                                    _____
                                      Héctor C. Estrada
                              United States Magistrate Judge